**PEOPLE of the State of New York, by Robert ABRAMS, Attorney General of the State of New York, Plaintiff–Appellee,**

v.

**Randall TERRY, Defendant–Appellant,**

**Operation Rescue National, also known as Operation Rescue; Keith Tucci; Youth for America; Missionaries to the Pre–Born; Joseph Foreman; John & Jane Does; Patrick Mahoney; B.O.R.N., Defendants.**

No. 230, Docket 94–7213.

United States Court of Appeals, Second Circuit.

Argued Sept. 7, 1994.

Decided Jan. 5, 1995.

**2.** This opinion was circulated to the active members of the court prior to filing.

Vincent P. McCarthy, Joseph P. Secola, New Milford, CT (McCarthy & Secola, Affiliate Attys. with American Center For Law and Justice, New Milford, CT, Jay Alan Sekulow, James M. Henderson, Sr., Mark N. Troobnick, Walter M. Weber, Byron J. Babione, American Center For Law and Justice, Washington, DC, of counsel), for defendant-appellant.

Sanford M. Cohen, Asst. Atty. Gen., State of New York, Civil Rights Bureau, New York City (G. Oliver Koppell, Atty. Gen. of the State of New York, New York City, of counsel), for plaintiff-appellee.

Before: MESKILL, MAHONEY and WALKER, Circuit Judges.

MESKILL, Circuit Judge:

The principal issue in this appeal is the validity of a preliminary injunction issued by the United States District Court for the Southern District of New York, Ward, J.,[1]

---

1. The pertinent provisions of the preliminary injunction provide:

It Is Further Ordered that . . . defendants, the officers, directors, agents, and representatives of defendants, and all other persons known or unknown, acting in their behalf or in concert with them, in any manner or by any means, are [enjoined] from:

1. trespassing on, blocking, or obstructing[ ] ingress into or egress from any facility at which abortions are performed in New York City and in all locations within the Southern District of New York;

2. demonstrating within fifteen (15) feet from either side of or in front of doorways or doorway entrances of such facilities or within fifteen (15) feet of any person seeking access to or leaving those facilities, except that the form of demonstrating known as sidewalk counseling by no more than two (2) persons as specified in paragraph (3) shall be allowed, and provided that persons escorting patients to or from a facility at which abortions are provided shall not be deemed in violation of this provision;

addressed to planned activities of anti-abortion activists. Appellant Randall Terry appeals from the district court's denial of a motion to vacate or modify the injunction, *People v. Operation Rescue*, No. 92–CV–4884, 1994 WL 23118 (S.D.N.Y. Jan. 21, 1994). For the reasons stated below, we affirm.

## BACKGROUND

This appeal arises out of an action brought by the Attorney General of the State of New York principally alleging that the defendants participated in a nationwide conspiracy motivated by a class-based animus to deprive women of rights secured by both the Constitution and New York state law. Defendants are various individuals and organizations, including appellant, that oppose abortion and have engaged in protests at or near abortion clinics throughout the country. Defendants' conduct has been the subject of much litigation in this Circuit. *See, e.g., Pro–Choice Network v. Schenck*, 1994 WL 480642 (2d Cir. Sept. 6, 1994), *rehearing in banc granted*, No. 92–7302 (2d Cir. Dec. 30, 1994); *Town of West Hartford v. Operation Rescue*, 991 F.2d 1039 (2d Cir.) (*Town of West Hartford II* ), *cert. denied*, —— U.S. ——, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993); *New York State Nat'l Org. for Women v. Terry*, 961 F.2d 390 (2d Cir.1992) (*New York State NOW* ), *vacated and remanded sub nom. Pearson v. Planned Parenthood Margaret Sanger Clinic*, —— U.S. ——, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993), *judgment reinstated*, 996 F.2d 1351 (2d Cir.1993) (per curiam), *vacated on other grounds and remanded*, —— U.S. ——, 114 S.Ct. 2776, 129 L.Ed.2d 888 (1994), *vacated and remanded*, 41 F.3d 794 (2d Cir.1994) (per curiam).

The immediate occasion for the commencement of this suit was the purported threat, made by defendants, to blockade abortion clinics in New York City from July 13 to July 17, 1992, to coincide with the Democratic Party's National Convention (DNC). Additionally, the Attorney General asserted that the defendants planned to disrupt events related to the convention itself in order to protest the Democratic Party's stance on the issue of abortion. Seeking declaratory and injunctive relief, the complaint asserted the conspiracy claim under the Ku Klux Klan Act, 42 U.S.C. § 1985. Specifically, the conspiracy claim was predicated on both the first and second clauses of section 1985(3). Those clauses read in pertinent part:

> If two or more persons in any State or Territory conspire or go in disguise on the

3. physically abusing, grabbing, intimidating, harassing, touching, pushing, shoving or crowding persons entering or leaving, working at or using any services at any facility at which abortions are performed in New York City and at all locations within the Southern District of New York; provided, however, that sidewalk counseling consisting of a conversation of a non-threatening nature by not more than two people with each person or group of persons they are seeking to counsel shall not be prohibited; also provided that no person is required to accept or listen to sidewalk counseling, and that if anyone or any group of persons who is sought to be counseled wants not to have counseling, to leave, or to walk away, that person or group of persons shall have the absolute right not to be counseled, and in such event all persons seeking to counsel that person or group of persons shall cease and desist from such counseling, and shall thereafter be governed by the provisions of paragraph (2) ....;

4. using any mechanical loudspeaker or sound amplification device or making any excessively loud sound which disturbs, injures, or endangers the health or safety of any patient or employee of any facility at which abortions are performed;

5. attempting to take, or inducing, encouraging, directing, aiding, or abetting in any manner others to take, any of the actions described in clauses (1) through (4) above;

6. harassing, intimidating or physically abusing any doctor who performs abortions, any provider of abortion services or any operator or employee of a facility that provides abortion services at his or her place of residence;

. . . .

It Is Further Ordered that nothing in the Court's Order should be construed to limit defendants and those acting in concert with them from exercising their legitimate First Amendment rights; and

It Is Further Ordered that the failure to comply with the Court's Order by any defendant or anyone acting in their behalf or in concert with them shall subject each person to civil damages of $25,000 per day for the first violation of the Court's Order, a civil contempt fine double that of the previous fine for each successive violation, and to joint and several liability for all attorney's fees and related costs incurred by plaintiffs in relation to enforcement of any Order of this Court[.]

highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ..., the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (1988). The complaint further alleged four pendent state law claims, including public nuisance and violations of New York Executive Law § 296(2) and (6),[2] New York Civil Rights Law § 40–c,[3] and New York Public Health Law § 4162.[4]

With the filing of the complaint, the Attorney General moved, pursuant to Federal Rule of Civil Procedure 65(b), for a temporary restraining order (TRO) prohibiting appellant Terry and the other defendants from engaging in blockades of abortion clinics or any planned activities related to the DNC. Following a hearing, which none of the defendants attended, the district court granted the TRO. The court then set a hearing date on the motion for a preliminary injunction for July 13, 1992.

Appellant Terry and the other defendants did appear before Judge Ward at the July 13, 1992 hearing. In opposition to the motion, defendants submitted an affirmation of their attorney. Significantly, this affirmation failed to challenge any aspect of the proposed injunction seeking to enjoin certain activities at the abortion clinics, including the sidewalk counseling (and related "cease and desist" requirement) and the fifteen-foot "bubble zone" provisions. Rather, the affirmation only addressed and opposed those parts of the injunction that proscribed the blockading of events related to the DNC. Arguing that the Attorney General had failed to offer any evidence to support the charge that the defendants collectively planned to disrupt the DNC, the defendants requested that the court amend the proposed injunction by deleting any reference to any activities to be conducted by the defendants at the 1992 DNC.

At oral argument, moreover, defendants' attorney reiterated to the district court that only those portions of the injunction enjoining conduct at the DNC were at issue. Indeed, the following colloquy took place between the district court and defendants' attorney:

> THE COURT: [S]o the record is clear, as I read your papers, and I have just heard you, you limit your arguments to the allegations in the complaint and

---

2. New York Executive Law § 296 provides in pertinent part:

> 2. (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... sex ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof....
>
> ....
>
> 6. It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

New York Executive Law § 292(9) defines the term "place of public accommodation" to include dispensaries, clinics and hospitals. Moreover, § 297(9) authorizes injunctive relief as a remedy.

3. New York Civil Rights Law § 40–c states:

> 1. All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.
>
> 2. No person shall, because of ... sex ..., be subjected to any discrimination in [her] civil rights, or to any harassment ... in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

4. Paragraph 7 of the injunction enjoined the defendants from presenting or confronting then-candidates Governor Bill Clinton and Senator Albert Gore with a fetus or fetal remains in violation of New York Public Health Law § 4162. This provision expired at midnight, July 17, 1992 and thus is not part of the present appeal.

the portions in the [TRO] which relate to the [DNC], is that correct?

ATTORNEY: That is correct, your Honor.

Without making any factual findings, the district court then issued the preliminary injunction. Based on the representations made by appellant Terry and the other defendants that they had no intention of disrupting the DNC, Judge Ward deleted those portions of the TRO related to this conduct. The provisions addressing the threatened blockades of abortion clinics, however, remained in force. To coerce compliance with the preliminary injunction the district court ordered that fines would be imposed, in the amount of $25,000, for the first violation of the decree, to be doubled for each subsequent offense.

Sixteen months after the commencement of the action, on November 15, 1993, Terry served and filed his answer to the amended complaint,[5] together with a motion to vacate or modify the injunction. With respect to the vacatur branch of his motion, appellant advanced three arguments: (1) the Supreme Court's decision in *Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), compelled dismissal of the complaint for lack of subject matter jurisdiction, (2) the dismissal of the sole federal claim required the district court to dismiss the pendent state law claims, and (3) section 1985(3) did not provide for injunctive relief. In the alternative, the motion asserted that, as the section 1985(3) claim failed in light of the *Bray* decision, the only basis for which the injunction could be issued was pursuant to New York state law. Therefore, the coercive sanctions necessitated modification to conform to New York state law, which provides that a contempt violation cannot be punished by fines in excess of $250 plus the complainant's costs and expenses. *See* N.Y.Jud.Law § 773 (McKinney 1992).

The district court denied the motion in all respects on January 21, 1994. The court stated that it had subject matter jurisdiction over the federal question claim, thereby allowing it to exercise pendent jurisdiction over the state law claims. Furthermore, the court held that there was no basis "to depart from the general rule and hold that injunctive relief is not available under § 1985(3)." Finally, the court found it unnecessary to modify the coercive sanctions as federal law, not state law, governed the permissibility and amount of contempt fines, even if the state law claims provided the sole basis for the preliminary injunction. This appeal then ensued. *See* 28 U.S.C. § 1292(a)(1).

Terry appeals the district court's rulings that (1) there is subject matter jurisdiction over the claims predicated on section 1985(3), (2) injunctive remedies are available under that statute, and (3) the fines imposed by the injunction need not be modified to conform with New York state law. Moreover, appellant also raises numerous issues not addressed by the court below, including arguments that (1) the injunction's provisions violate the First Amendment, (2) the injunction's restrictions go beyond that which is permissible to redress the public nuisance claim, (3) section 40–c does not provide for injunctive relief and, moreover, the section 40–c claim fails to state a claim upon which relief can be granted, and (4) the civil contempt provisions should be treated as criminal rather than civil contempt, *see International Union, United Mine Workers of America v. Bagwell*, —— U.S. ——, —— ——, 114 S.Ct. 2552, 2562–63, 129 L.Ed.2d 642 (1994) (holding that violations of an injunction assessing non-compensatory fixed fines can only be prosecuted as criminal contempt, with attendant due process protection afforded to alleged contemnor).

## DISCUSSION

### I. *Subject Matter Jurisdiction*

■ The amended complaint primarily asserts that the defendants are engaged in a

---

**5.** In the interim the district court presided over a substantial amount of contempt litigation arising out of violations of the preliminary injunction by various defendants, including appellant himself. *See, e.g., United States v. Terry*, 815 F.Supp. 728 (S.D.N.Y.1993) (convicting Terry of criminal contempt following breach of injunction), *aff'd,* 17 F.3d 575 (2d Cir.1994); *People v. Foreman*, 834 F.Supp. 116 (S.D.N.Y.1993) (fining two individuals $25,000 each in civil contempt proceeding for violation of injunction).

conspiracy, motivated by a class-based animus toward women in general, aimed at depriving women of the constitutional right to unimpeded interstate travel, the Fourteenth Amendment right to an abortion, and certain state-conferred rights. This claim arises under what is commonly referred to as the deprivation clause of section 1985(3), which was the focus of the Supreme Court's decision in *Bray*. Appellant contends that in light of that decision the plaintiff's section 1985(3) claim is no longer plausible, and thus the plaintiff has failed to invoke the court's subject matter jurisdiction.

In *Bray* the Supreme Court addressed an injunction prohibiting demonstrations at abortion clinics in the metropolitan Washington, D.C. area. The district court granted the injunctive relief after determining that the clinics successfully had demonstrated a claim actionable under section 1985(3). The Supreme Court reversed. First, the Court concluded that the "class" of "women seeking abortion" did not constitute a group protected by section 1985(3), and that a section 1985(3) claim, which requires a showing of an invidiously discriminatory animus, could not be satisfied if the only evidence of that animus was an opposition to abortion. *See Bray*, — U.S. at —— – ——, 113 S.Ct. at 759–60. Second, the Court found that the abortion clinics had not demonstrated that the right alleged to have been violated by the anti-abortion protestors, namely the right to travel, was a "conscious objective of the enterprise" as opposed to a right merely incidentally affected. *Id.* at ——, 113 S.Ct. at 762.

When, as here, a court's federal question jurisdiction is the subject of a motion to dismiss, the Supreme Court has instructed that the following test is appropriate to determine whether jurisdiction indeed exists:

> [T]he test is whether the " 'cause of action alleged is *so patently without merit* as to justify ... the court's dismissal for want of jurisdiction.' " *Hagans v. Lavine*, 415 U.S. 528, 542–543[, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577] (1974), quoting *Bell v. Hood*

[327 U.S. 678,] 683 [66 S.Ct. 773, 776, 90 L.Ed. 939] [ (1946) ]. (Emphasis added.) See also *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 [94 S.Ct. 772, 776, 39 L.Ed.2d 73] (1974) (test is whether right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy").

*Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 70–71, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); *see also Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir.1990) (*Town of West Hartford I* ).

As we have stressed before, *Bray* did not intend to "foreclose[ ] all resort to § 1985(3) [deprivation clause claims] in all instances involving 'persons obstructing access to abortion clinics.' " *Town of West Hartford II*, 991 F.2d at 1048. Rather, it is our view that district courts must now scrutinize such claims "through the prism of the *Bray* Court's pronouncement that 'impairment [of the right] must be a conscious objective of the enterprise.' " *Id.* (quoting *Bray*, — U.S. at ——, 113 S.Ct. at 762). It may very well be, of course, that these claims, in light of *Bray*, cannot survive on the merits. This determination, however, is not before us. "Consideration of the issue of jurisdiction is not equivalent ... to an evaluation of the merits of a party's federal claim." *Town of West Hartford I*, 915 F.2d at 99; *see also Montana–Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951) ("[I]f the plaintiff really makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad.") (quotation omitted). At this stage of the proceedings, therefore, we are only concerned with whether the claim confers on the court the power to decide it. We find that it does. Accordingly, we affirm the district court's denial of the motion to vacate the preliminary injunction for want of jurisdiction.[6]

---

**6.** Because we determine the deprivation clause claim provides a basis for subject matter jurisdiction, it is unnecessary to address whether the second cause of action under section 1985(3)'s "hindrance" or "prevention" clause would afford an independent jurisdictional basis.

## II. *Propriety of Injunctive Relief Under Section 1985(3)*

■ Appellant next contends that the district court erroneously decided that section 1985(3) provides for injunctive relief. The preliminary injunction issued, however, rests not only on section 1985(3), but also on independent state law grounds. Thus, even assuming that section 1985(3) does not authorize an injunctive remedy, the injunction can be sustained on the basis of the independent state law claims.[7] *See New York State NOW,* 961 F.2d at 396 (affirming injunction on state law grounds without addressing merits of section 1985(3) claim); *Roe v. Operation Rescue,* 919 F.2d 857, 867 (3d Cir.1990) (same). New York courts expressly have recognized the authority to enjoin a public nuisance, *see, e.g., People ex rel. Lemon v. Elmore,* 256 N.Y. 489, 492, 177 N.E. 14, 15 (1931), and the New York legislature has empowered courts to issue injunctions for violations of New York Executive Law § 296, *see supra* note 2.[8] We thus uphold the injunction on these grounds alone and expressly decline to address the merits of appellant's contention that section 1985(3), standing alone, does not support such relief.

## III. *Modification of the Coercive Sanctions*

■ We reject appellant's contention that the contempt fines set forth in the preliminary injunction necessitate modification because state law caps the permissible amount of the sanctions at $250. *See* N.Y.Jud.Law § 773 (McKinney 1992). Even if the district court finds that there is no valid claim under section 1985(3), thereby leaving only the state law claims as the underlying basis for the injunction, we hold that federal law governs the severity of the sanction for contumacious disregard of a federal court injunction.

■ It is a firmly established principle that the power to punish for contempt is an inherent power of the federal courts. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates.") (quotation omitted); *Young v. United States ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787, 795–96, 107 S.Ct. 2124, 2131–32, 95 L.Ed.2d 740 (1987); *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). These powers, moreover, are " 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Chambers,* 501 U.S. at 43, 111 S.Ct. at 2132 (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)). Thus, it is quite anomalous to suggest that a federal court must look to the New York state legislature to vindicate an abuse of the federal judicial power. *See Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911) ("the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary").

■ Nor will failure to apply New York state law in this instance undermine the principles enunciated by the Supreme Court in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), as appellant claims. Contempt penalties are not intended to punish violations of substantive law. Rather, they are fashioned to serve a limited purpose: vindication of the authority of the court. *See Chambers,* 501 U.S. at 55, 111 S.Ct. at 2138; *Hutto v. Finney,* 437 U.S.

---

7. Appellant raised at oral argument before this Court the prospect that the district court should not have exercised supplemental jurisdiction over the state law claims. The district court did not abuse its discretion in so exercising jurisdiction. The plaintiff's state and federal claims "derive from a common nucleus of operative fact" and are such that one would ordinarily expect them to be tried in one judicial proceeding. *See United Mine Workers of America v. Gibbs,* 383

U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *see also New York State NOW,* 961 F.2d at 396.

8. Appellant also contends that New York Civil Rights Law § 40–c does not authorize injunctive relief. As we find the injunction can be sustained on the public nuisance and other statutory grounds, it is unnecessary to address this argument.

678, 691, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978). Thus, the rule of *Erie* does not apply and, accordingly, we affirm the district court's refusal to modify the coercive penalties of the injunction.

## IV. *Scope of the Injunction*

 Appellant challenges the scope of the preliminary injunction on numerous other grounds. Terry first alleges that the injunction's provisions are impermissibly broad because they are not "tailored" specifically to enjoin the public nuisance claim and they are violative of his First Amendment rights. Next, he contends that the plaintiff's section 40–c claim is no longer viable in light of the holding in *Bray*. Finally, Terry asserts that the injunction's contempt provisions must be treated as criminal, not civil, contempt.

We decline to address the merits of any of these challenges for the reasons that follow. In the district court, appellant possessed two opportunities to present these arguments. First, Terry could have done so at the initial hearing on the preliminary injunction. Instead, even after inquiry by the district court, appellant and the other defendants maintained that their only objection was to those portions of the injunction enjoining anti-abortion activities at events related to the DNC. Second, appellant could have pressed any challenges available under *Sierra Club v. U.S. Army Corps of Engineers*, 732 F.2d 253, 256–57 (2d Cir.1984) (discussing standard for reviewing a requested modification of an injunction), in his motion to vacate or modify the injunction. In this motion, however, Terry sought vacatur on the ground that the sole federal claim required dismissal, that pendent jurisdiction should thus not be exercised over the state law claims, and that section 1985(3) did not authorize injunctive relief. In the alternative, Terry moved to modify the coercive sanctions contained in the injunction to conform to New York law. Terry did not give the district court an opportunity to hear the claims he now asserts. In our view, the district court should have the first opportunity to determine whether the injunction exceeds its state law basis, whether the injunction violates appellant's First Amendment rights in light of the Supreme Court's recent decision in *Madsen v. Women's Health Center, Inc.*, —— U.S. ——, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), and whether the Supreme Court's recent decision in *Bagwell* has any application to the present case. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Accordingly, we do not address Terry's challenges to the scope of the injunction, however, we leave the door open for Terry, upon proper application to the district court, to pursue these claims.

## CONCLUSION

We affirm the order denying the motion to vacate or modify the injunction.