PEOPLE of the State of New York, by Dennis C. VACCO, Attorney General of the State of New York, Plaintiff–Appellee,

v.

OPERATION RESCUE NATIONAL; Randall Terry; Keith Tucci; Youth for America; Missionaries to the Pre–Born; Joseph Foreman; John and Jane Does; Patrick Mahoney; B.O.R.N., Defendants,

Raymond Mylott, Respondent,

Daniel Brusstar; Norman Weslin; John Dunkle; Mary L. Biltz; E.J. Gannon; Carol M. Hagen; Michael J. Henry; Clarence Hinke; Colin Hudson; Ethel Norton; Edward Sauley; Lola Yellico; James Yonan, Respondents–Appellants,

United States of America, Creditor–Appellee,

John. J. Broderick, Esquire, Appellant.

Nos. 259, 260, Dockets 94–7947, 94–9039.

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1995.

Decided March 29, 1996.

Joseph P. Secola, New Milford, Connecticut (McCarthy & Secola, The Rutherford Institute of Connecticut, of counsel), for Respondents–Appellants.

A. Lawrence Washburn, Jr., New York City, for Respondents–Appellants and Appellant.

Sooknam Choo, Assistant Attorney General of the State of New York, New York City (Dennis C. Vacco, Attorney General, Victoria A. Graffeo, Solicitor General, Barbara A. Mehlman, Assistant Attorney General, of counsel), for Plaintiff–Appellee.

Edward Scarvalone, Assistant United States Attorney for the Southern District of New York, New York City (Mary Jo White, United States Attorney, Steven M. Haber, Assistant United States Attorney, of counsel), for Creditor–Appellee.

Before: MESKILL, MAHONEY, and WALKER, Circuit Judges.

MAHONEY, Circuit Judge:

Respondents-appellants Daniel Brusstar, Norman Weslin, John Dunkle, Mary L. Biltz, E.J. Gannon, Carol M. Hagen, Michael J. Henry, Clarence Hinke, Colin Hudson, Ethel Norton, Edward Sauley, Lola Yellico, and James Yonan ("Respondents") appeal from judgments entered August 11, 1994 in the United States District Court for the Southern District of New York, Robert J. Ward, *Judge,* that adjudicated them in civil contempt of a prior preliminary injunction of that court, awarded injunctive relief, compensatory damages, and attorney fees against all of the Respondents, and also assessed a civil contempt fine against Sauley. Respondents contend that they were not proper parties to the contempt proceeding because none of them are named in, or were acting in concert with anybody who is named in, the prior preliminary injunction. Respondents further contend that plaintiff-appellee the State of New York ("New York") lacked standing to recover the compensatory damages awarded by the district court. In addition, Sauley challenges the district court's calculation of his pro rata share of costs and attorney fees.

Appellant John J. Broderick was counsel for Respondents, except Brusstar, at the proceedings below. He appeals from an order of the district court entered August 11, 1994 that assessed a $2,500 sanction against him pursuant to 28 U.S.C. § 1927 and the district court's inherent powers. The district court sanctioned Broderick after Broderick insisted upon playing certain videotaped evidence in open court despite the court's repeated admonitions that the evidence was cumulative and wasteful of the court's time. Because Broderick was directed to make payment to the United States, the United States joins in this appeal as creditor-appellee.

We affirm the district court's determination that Respondents are proper parties to this proceeding, and therefore affirm the injunctive relief entered against them. However, we find that New York lacked standing to recover compensatory damages on behalf

of nonparty entities injured by Respondents' conduct, and accordingly vacate the award of damages and remand for recalculation of attorney fees. Finally, we affirm the district court's sanction against Broderick.

## Background

### A. *The Contempt Proceeding.*

This case involves violations of a preliminary injunction issued in the district court on July 13, 1992 (the "1992 Injunction") in the underlying action, which was brought by the Attorney General of the State of New York against defendants Operation Rescue National, Randall Terry, Keith Tucci, Youth for America, Missionaries to the Pre–Born, Joseph Foreman, Patrick Mahoney, John and Jane Does, and the Bi–State Operation Rescue Network ("B.O.R.N.") (collectively the "Enjoined Parties"), and alleged that their anti-abortion protest activity violated 42 U.S.C. § 1985(3) and New York law. The 1992 Injunction restrained the Enjoined Parties, their "officers, directors, agents, and representatives ...., and all other persons known or unknown, acting in their behalf or in concert with them," from, *inter alia,* "trespassing on, [or] blocking or obstructing ... ingress into or egress from any facility ... at which abortions are performed in New York City and in all locations within the Southern District of New York." [1]

The instant contempt proceeding arose out of two anti-abortion protests on October 9, 1993 and June 28, 1994, at which Respondents and Raymond Mylott [2] participated in physical blockades of the Women's Medical Pavilion (the "Pavilion"), a facility at which abortions are performed that is located within the Southern District of New York in the Village of Dobbs Ferry (the "Village"). In connection with the October 9, 1993 protest, Respondents, except Brusstar, were arrested, tried, and convicted of state law offenses, including trespass and disorderly conduct. In connection with the June 28, 1994 protest, Respondents, with the exception of Brusstar and Dunkle, were once again arrested, tried, and convicted of violations of state law, including disorderly conduct, trespass, and criminal contempt.

On July 1, 1994, New York moved by order to show cause in the district court for an order holding Respondents in contempt of the 1992 Injunction pursuant to 18 U.S.C. § 401, Rule 70 of the Federal Rules of Civil Procedure, and Rule 43 of the Civil Rules of the United States District Court for the Southern District of New York. [3] New York sought "civil damages" in the amount of $75,000 against each of the Respondents, plus costs, attorney fees, and other just and proper relief. [4]

A hearing was held on July 26–28, 1994 at which Respondents (except Sauley, who had entered into a settlement with New York, and Brusstar, who had been found in default after failing to appear), were adjudicated in civil contempt. [5] The district court found that

---

**1.** This Court recently upheld the 1992 Injunction. *See New York by Abrams v. Terry,* 45 F.3d 17 (2d Cir.1995).

**2.** Mylott, a named respondent who participated in only the first of the two protests, entered into a settlement with New York and does not join in this appeal.

**3.** 18 U.S.C. § 401, which governs criminal contempt, and Rule 70, which deals with the enforcement of judgments relating to property, are not applicable here. Rule 43 provides in pertinent part:

(a) A proceeding to adjudicate a person in civil contempt of court ... shall be commenced by the service of a notice of motion or order to show cause.... The affidavit upon which such notice of motion or order to show cause is based shall set out with particularity

the misconduct complained of, the claim, if any, for damages occasioned thereby, and such evidence as to the amount of damages as may be available to the moving party. A reasonable counsel fee, necessitated by the contempt proceeding, may be included as an item of damage.

**4.** On the same day, New York commenced an action in federal court against Respondents and others alleging violations of the Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248, and seeking injunctive relief, compensatory damages, and civil penalties.

**5.** Because of Brusstar's default, a default judgment had already been entered against him. Accordingly, the July 26–28, 1994 hearing was deemed a trial on the issue of damages with respect to the nondefaulting Respondents, and an inquest with respect to Brusstar.

Respondents had received notice of the 1992 Injunction when it was read aloud to them by an officer of the Dobbs Ferry Police Department during the October 9, 1993 protest, and that Respondents had acted in concert with Brusstar. The court determined that Brusstar was either an officer of B.O.R.N., an unincorporated association named in the 1992 Injunction, or an officer of LIFE, B.O.R.N.'s "successor organization."

The court granted injunctive relief that substantially incorporated the terms of the 1992 Injunction, declined to impose fines, and awarded $45,523.11 in compensatory damages against Respondents jointly and severally, representing costs incurred by the Pavilion and the Village as a result of the October 9, 1993 and June 28, 1994 protests. The district court also awarded New York costs and reasonable attorney fees, which the court subsequently determined to be $2,847.54 against each Respondent except Sauley, and $1,982.79 against Sauley. *See New York by Koppell v. Operation Rescue Nat'l,* No. 92 CIV. 4884 (RJW), 1994 WL 517457 (S.D.N.Y. Sept. 21, 1994) (*"Koppell I "*). The court stayed enforcement of the judgment for thirty days, and offered to extend the stay indefinitely if Respondents made and kept a sworn pledge not to engage, anywhere in New York, in conduct that violated the 1992 Injunction as incorporated in the court's judgment.

### B. *Sauley's Settlement.*

Prior to the start of the contempt trial, by letter dated July 11, 1994, Sauley made an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure.[6] Sauley offered to pay $15,000 as the "monetary portion of judgment," and to accept (1) a $2,000 suspended coercive fine and (2) injunctive relief in accordance with the 1992 Injunction except for provisions thereof "no longer relevant." Sauley's letter declared that he would seek to vacate the judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure in the event that a court invalidated the 1992 Injunction. By letter dated July 20, 1994, New York rejected Sauley's offer, asserting that Sauley's reservation of his right to seek relief pursuant to Rule 60 rendered his offer of judgment "a nullity."

On July 26, 1994, Sauley made a second offer in open court, this time accepting liability for up to $15,000 in compensatory damages and submitting to a $10,000 suspended coercive fine and injunctive relief. New York accepted Sauley's offer, and the district court subsequently entered judgment against him. The judgment paralleled that entered against the other Respondents, except that Sauley's share of the joint and several liability was limited to $15,000 and Sauley was assessed a fine in the agreed amount. The district court stayed the fine, and provided that it would be "vacated and expunged in its entirety" if Sauley complied with the injunctive portion of the judgment for three years or until the 1992 Injunction or any successor injunction expired, whichever first occurred.[7]

In assessing fees and costs against Respondents, the district court found Sauley responsible for his pro rata share of fees and costs incurred up until July 26, 1994, the date of Sauley's second offer of judgment. The

---

6. Rule 68 provides in pertinent part:

 At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

7. *International Union, United Mine Workers v. Bagwell,* —— U.S. ——, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), limits the ability of a court to impose noncompensatory fines for indirect contempt (i.e., for contempt occurring outside the presence of the court) in the absence of criminal procedural protections. *See id.* at 2557–63; *see also New York State Nat'l Org. for Women v. Terry,* 41 F.3d 794 (2d Cir.1994) (per curiam) (applying *Bagwell* to an injunction similar to the one in this case). Under *Bagwell,* a noncompensatory fine is civil, and thus may ordinarily be imposed in the absence of a criminal trial "only if the contemnor is afforded an opportunity to purge." —— U.S. at ——, 114 S.Ct. at 2558 (citing *Penfield Co. v. SEC,* 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947)). Because Sauley does not challenge his fine on appeal, we need not decide whether the district court's judgment provided Sauley with the sort of "opportunity to purge" that *Bagwell* requires.

district court rejected Sauley's argument that Sauley's liability should be limited to the fees and costs incurred up until July 11, 1994, the date of his first offer, holding that because the terms of the July 26 settlement were more favorable to New York than those offered on July 11, Rule 68's fee-shifting provision was facially inapplicable. *See Koppell I,* 1994 WL 517457 at *1.

C. *Sanctions against Broderick.*

Pursuant to 28 U.S.C. § 1927 and the court's inherent powers, the district court sanctioned John Broderick, Respondents' counsel, in the amount of $2,500 following an incident involving videotaped evidence of the June 28, 1994 protest. On the third and final day of the contempt proceeding, Broderick began to play the hour-long videotape of the protest, which had been introduced in evidence by New York. After approximately fifteen minutes, the court interrupted the viewing to ask Broderick whether there was any relevant evidence on the remainder of the videotape that was not cumulative of the evidence already introduced. Despite having been furnished with the videotape several days before the start of the proceeding, Broderick responded that he had not previously viewed the tape. Broderick then asserted that because the videotape had been introduced as evidence in the case, he and his clients had a right to view the tape during the trial. Broderick also noted that two of the Respondents, Hudson and Yellico, had been incarcerated and had had no other opportunity to see the videotape.

The district court informed Broderick that he and his clients should have viewed the videotape outside of court beforehand, noting that the court would have enabled any incarcerated Respondent to view the videotape if an appropriate application for that relief had been made, and warned Broderick that if the tape failed to produce any noncumulative evidence, the court would "consider appropriate sanctions" against him. The district court interrupted the playing of the videotape several more times to inquire whether Broderick perceived any relevant new evidence. Each time, Broderick insisted that the viewing of the videotape be continued. When the videotape ended, the court concluded that Broderick had "multiplied the proceedings ... unreasonably and ... vexatiously," and indicated that it would "entertain an application [for sanctions] at an appropriate time."

At the conclusion of the proceeding, and following the district court's determination that respondents had violated the 1992 Injunction, the district court gave Broderick the opportunity to apologize for conduct that the district court characterized as "inappropriate, unprofessional and ... wasteful of the Court's time." Broderick refused to apologize, maintaining that he had "acted appropriately" and that his clients had "an absolute right" to view the videotape in open court once it had been introduced by New York as evidence against them. The court then sanctioned Broderick, and denied Broderick's subsequent motion to vacate the sanction. *See New York by Koppell v. Operation Rescue Nat'l,* No. 92 Civ. 4884, 1994 WL 557057 (S.D.N.Y. Oct. 7, 1994) ("*Koppell II* ").

**Discussion**

 As a preliminary matter, we consider whether Sauley may appeal from a judgment to which he consented. Appeal from a consent judgment is generally unavailable on the ground that the parties are deemed to have waived any objections to matters within the scope of the judgment. *See Nashville, C. & St. L. Ry. v. United States,* 113 U.S. 261, 266, 5 S.Ct. 460, 462, 28 L.Ed. 971 (1885); *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 526 (10th Cir.1992); *Coughlin v. Regan,* 768 F.2d 468, 469–70 (1st Cir.1985); *Kelly's Trust v. Commissioner,* 168 F.2d 198, 199 (2d Cir.1948) ("[A] consent judgment by its nature precludes an appeal."). However, a party consenting to entry of judgment may bring an appeal challenging the district court's subject matter jurisdiction. *Clapp v. Commissioner,* 875 F.2d 1396, 1398 (9th Cir. 1989); *White v. Commissioner,* 776 F.2d 976, 977–78 (11th Cir.1985) (per curiam).

 In view of our rejection of Respondents' claim that they were not proper parties to the contempt proceeding, we need not resolve whether this claim is a jurisdictional one that Sauley may raise on appeal. Re-

spondents' other contention, however, is clearly jurisdictional in nature. *See FW/ PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) ("[S]tanding 'is perhaps the most important of [the jurisdictional] doctrines.' ") (quoting *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (alteration in *FW/PBS* )). Sauley is therefore entitled to join the other Respondents in challenging on appeal the district court's authority to award New York damages on behalf of entities not party to the proceedings.

## A. *The Applicability to Respondents of the 1992 Injunction.*

Rule 65(d) of the Federal Rules of Civil Procedure provides:

> Every order granting an injunction ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Rule 65(d) codifies the well-established principle that, in exercising its equitable powers, a court "cannot lawfully enjoin the world at large." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir.1930). In order for a court to hold a nonparty respondent in contempt of a court order, "the respondent must either abet the [party named in the order], or must be legally identified with him." *Id.* at 833; *see also Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129–30 (2d Cir. 1979). The party seeking enforcement of an order bears the burden of demonstrating that the persons to be held in contempt are within the scope of the injunction. *See Vuitton et Fils*, 592 F.2d at 129.

Respondents do not challenge the district court's findings that they received notice of the injunction at the October 9, 1993 protest and that they acted in concert with Brusstar at both the October 9, 1993 and the June 28, 1994 protests. They do contest, however, the court's finding that on the dates of these protests, Brusstar was acting as an agent of either B.O.R.N. or a successor organization to B.O.R.N.

An injunction issued against a corporation or association binds the agents of that organization to the extent they are acting on behalf of the organization. *See Young v. Colgate–Palmolive Co.*, 790 F.2d 567, 573 (7th Cir.1986). Generally, persons who cease to act in one of the designated capacities are no longer bound by the decree. *See Alemite Mfg. Corp.*, 42 F.2d at 832–33. However, an organization and its agents may not circumvent a valid court order merely by making superficial changes in the organization's name or form, and in appropriate circumstances a court is authorized to enforce its order against a successor of the enjoined organization. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179, 94 S.Ct. 414, 422–23, 38 L.Ed.2d 388 (1973) (holding that Rule 65(d) allows enforcement of orders against successors of enjoined parties); *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945) ("Successors and assigns may ... be instrumentalities through which [the] defendant seeks to evade an order. ... If they are, by that fact they are brought within [the] scope of contempt proceedings by the rules of civil procedure."); *Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 674, 64 S.Ct. 826, 828, 88 L.Ed. 1001 (1944) ("[An injunction] may ..., in appropriate circumstances, be enforced against those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons."); *ICC v. Rio Grande Growers Coop.*, 564 F.2d 848, 849 (9th Cir.1977) (successor corporation bound by injunction).

Whether a new organization is the successor of an enjoined organization depends upon the facts and circumstances of the case. *See Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Restaurant Employees Int'l Union*, 417 U.S. 249, 256, 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1974) (case-by-case approach particularly appropriate in light of difficulty of successorship question); *International Union of Operating Eng'rs, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312–13 (7th Cir. 1987). The critical inquiry is whether there is a substantial continuity of identity between the two organizations. *Cf. John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 551,

84 S.Ct. 909, 915, 11 L.Ed.2d 898 (1964) (adequate continuity of identity to support continuing duty to arbitrate); *Stotter Div. of Graduate Plastics Co. v. District 65, United Auto Workers,* 991 F.2d 997, 1001 (2d Cir. 1993) (same).

We are aware of the difficulties faced by a trier of fact in cases such as this, where similarly constituted groups of individuals move fluidly between multiple unincorporated associations that share the same basic leadership and goals. Especially in view of the elusive nature of this inquiry, we conclude that the district court did not clearly err in finding that LIFE, an organization of which Brusstar was concededly an officer, was substantially a continuation of the B.O.R.N. organization. Both groups are essentially entities through which Brusstar and others organize anti-abortion protest activity in the New York, New Jersey, and Connecticut areas. The similarity of Brusstar's role as a leader of both B.O.R.N. and LIFE justified the district court in finding Brusstar bound by the 1992 Injunction in his capacity as an officer of LIFE. Thus, by acting in concert with Brusstar and with notice of the 1992 Injunction, the remaining Respondents were also so bound.

## B. *The Contempt Proceeding.*

We turn to Respondents' challenge to the monetary portion of the judgment. The district court awarded New York "[c]ompensatory damages ... representing ... damages incurred by the Village ... and ... damages incurred by the ... Pavilion." The court ordered that "[a]ny amounts of the judgment received by [New York] ... shall be distributed to the Village ... and the ... Pavilion." Respondents contend that New York lacked standing to recover this award. We agree.

Our analysis is governed by *New York by Abrams v. Seneci,* 817 F.2d 1015 (2d Cir.1987), in which we addressed the question "whether the Attorney General, suing as *parens patriae,* may obtain under RICO an order directing payment of treble damages to its citizen-consumers injured by defendants' alleged illegalities." *Id.* at 1017. In the

course of dismissing the suit for want of standing, we said that:

> The state cannot merely litigate as a volunteer the personal claims of its competent citizens. *Pennsylvania v. New Jersey,* 426 U.S. 660, 665, 96 S.Ct. 2333, 2335, 49 L.Ed.2d 124 (1976). Where the complaint only seeks to recover money damages for injuries suffered by individuals, the award of money damages will not compensate the state for any harm done to its quasi-sovereign interests. Thus, the state as *parens patriae* lacks standing to prosecute such a suit.

817 F.2d at 1017; *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 607, 102 S.Ct. 3260, 3268, 73 L.Ed.2d 995 (1982) ("[T]he State must articulate an interest apart from the interests of particular private parties...."); *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 102–03 (2d Cir.1990).

New York argues that it has an unmistakable sovereign interest in prosecuting Respondents for violations of the injunction. We agree that as a party to the proceeding in which the court's order issued, New York has standing to enforce compliance with that order by seeking injunctive relief, noncompensatory fines, and compensation for any economic loss *New York* may have suffered as a result of the contumacious conduct. However, New York's standing does not extend to the vindication of the private interests of third parties. *See Seneci,* 817 F.2d at 1017–18 ("To be sure, ... [the state] alleges ... injury to the integrity of the state's marketplace and the economic well-being of all its citizens. Since, however, the monetary relief sought by the complaint is not designed to compensate the state for those damages, the asserted presence of such damages cannot serve as the foundation for the state's authority to act here as the representative of its citizens."); *see also Warth v. Seldin,* 422 U.S. 490, 515, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975) ("[W]hether an association has standing ... depends in substantial measure on the nature of the relief sought."). The damages award in this case was designed solely to reimburse the Pavilion and the Village for harm to their interests, and the

district court's order awarding such relief to New York was accordingly invalid.

Because we vacate a portion of the relief provided to New York as the prevailing party, we also vacate and remand the award of attorney fees so that the district court may determine the proportion of counsel's work that was devoted to proving injury suffered by the Village and the Pavilion, and reduce its award accordingly. *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1012 (2d Cir. 1995). In recalculating its award, the district court may hold Sauley liable for his share of fees up until Sauley's July 26, 1994 offer of judgment. Even if Rule 68 applies to cases that end in settlement,[8] it cannot help Sauley here because, as the district court found in *Koppell I*, 1994 WL 517457, at *1, "the July 26th settlement differed from the July 11th offer in that the July 26th settlement was more favorable to plaintiffs," precluding the applicability of Rule 68. *See supra* note 6.

## C. The Sanctions against Broderick.

In sanctioning Broderick, the district court relied upon both 28 U.S.C. § 1927 and its inherent supervisory powers. Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

■■■ This provision is designed to deter unnecessary delays in litigation by imposing upon attorneys an obligation to avoid dilatory tactics. *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991). Sanctions under § 1927 require a finding of bad faith, which can be inferred " 'when the attorney's actions are so

completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.' " *Id.* (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)). The district court's imposition of sanctions is reviewed under an abuse of discretion standard. *See In re Cohoes Indus. Terminal, Inc. (Baker v. Latham Sparrowbush Assocs.)*, 931 F.2d 222, 230 (2d Cir.1991).

■■■ On the last day of the contempt hearing, Broderick insisted on viewing an entire hour-length videotape, even though there was no relevant matter on the tape that was not cumulative of its first fifteen minutes. Although Broderick claims not to have known what would be revealed by the videotape, he had several prior opportunities to view the tape outside of court. His failure to do so may not be condoned. *See Magill v. Dugger*, 824 F.2d 879, 886 (11th Cir.1987) ("One of the primary duties defense counsel owes to his client is the duty to prepare himself adequately prior to trial.").

Nor is there merit to Broderick's contention that his clients had a right to have recorded evidence displayed in its entirety in open court. Both the mandate of Rule 1 of the Federal Rules of Civil Procedure that those rules be construed "to secure the just, speedy, and inexpensive determination of every action," the dictate of Rule 102 of the Federal Rules of Evidence that those rules be construed to eliminate "unjustifiable expense and delay," and the allowance in Rule 1006 of the Federal Rules of Evidence for complex evidence to be presented in summary form should be read to preclude an absolute right of a litigant to command that a videotape be shown in full, or every word of a document be read, in open court. Under these circumstances, the ·district court was

---

8. In *EEOC v. Hamilton Standard Div., United Technologies Corp.*, 637 F.Supp. 1155 (D.Conn. 1986), the court rejected "the proposition that the offer of judgment provisions of Rule 68, Fed. R.Civ.P., apply to cases that end in settlement and a stipulated dismissal as well as to cases that end with the entry of judgment after trial." *Id.* at 1158. By contrast, the Ninth Circuit ruled in

*Lang v. Gates*, 36 F.3d 73 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 579, 130 L.Ed.2d 494 (1994), that "to promote the purposes of Rule 68, the phrase 'judgment finally obtained' [in Rule 68] certainly would encompass an order finally terminating the litigation as a result of settlement." *Id.* at 77.

entitled to infer that Broderick's conduct was undertaken in bad faith, and did not abuse its discretion in finding that this conduct so unreasonably and vexatiously multiplied the proceedings as to warrant sanctions under 28 U.S.C. § 1927. *See Koppell II*, 1994 WL 557057 at *2. Because we uphold the sanctions pursuant to § 1927, we do not reach the issue whether the sanctions were independently justified under the district court's inherent powers.

### Conclusion

The district court's order assessing sanctions against Broderick is affirmed. The court's judgments holding Respondents in civil contempt of the 1992 Injunction and enjoining them from future similar violations are affirmed. The award of $45,523.11 in compensatory damages is vacated, and the award of attorney fees is vacated and remanded for further proceedings consistent with this opinion. The parties shall bear their own costs.