768 F.2d 1159
 1985-2 Trade Cases 66,720
 Lloyd J. DREILING, Steven J. Dreiling, and L.J. Dreiling
Motor Company, Inc., a Colorado Corporation,
Plaintiffs-Appellants,
Richard B. Podoll, Appellant,
v.
PEUGEOT MOTORS OF AMERICA, INC., a Delaware Corporation,
Automobile Peugeot, a French Corporation, Peugeot, S.A., a
French Corporation, Chrysler Corporation, a Delaware
Corporation, Syd Dorn, Lou Bartlett, and Pierre LeMaire, Defendants,
William McMullin, Defendant-Appellee.
 No. 83-1317.
 United States Court of Appeals,
Tenth Circuit.
 July 24, 1985.
 
 Hugh A. Burns of Burns & Figa, P.C., and Richard B. Podoll of Podoll and Podoll, P.C., Denver, Colo., for plaintiffs-appellants.
 Gregory R. Piche of Spurgeon, Haney & Howbert, Colorado Springs, Colo., for defendants-appellees.
 Before BARRETT and SEYMOUR, Circuit Judges, and BOHANON, District Judge.*
 BARRETT, Circuit Judge.
 
 
 1
 This is a case of first impression in this court. In this case we are asked to review an order of the district court awarding attorney's fees and costs in the amount of $7,050.00 in favor of William McMullin (McMullin) and against Lloyd J. Dreiling, Steven J. Dreiling, L.J. Dreiling Motor Company, and Richard B. Podoll (Podoll), their attorney, pursuant to 28 U.S.C. Sec. 1927.
 
 
 2
 On June 15, 1981, Podoll filed a complaint on behalf of the Dreilings against Peugeot Motors of America (Peugeot) and others, including McMullin, a former dealer service representative of Peugeot. Within the complaint, the Dreilings alleged that McMullin had conspired with Peugeot and others to terminate L.J. Dreiling Motor Company's relationship with Peugeot through the submission of fraudulent warranty claims to Peugeot. The Dreilings sought treble damages against each named defendant, including McMullin, in the amount of $5,280,000 pursuant to 15 U.S.C. Sec. 15.
 
 
 3
 McMullin answered on October 5, 1981, and denied participating in a conspiracy in restraint of trade injurious to Dreilings. McMullin also counterclaimed, alleging that the Dreilings claim against him was "vexatious, wanton and brought in bad faith and for oppressive reasons" (R.Vol. I at 50). McMullin requested that the court award his costs and attorney's fees.
 
 
 4
 On June 8, 1982, Louis Bartlett, a former employee of the L.J. Dreiling Motor Company, was deposed. Bartlett stated during his deposition that: before L.J. Dreiling hired him he related that when a vehicle came in under warranty they should find "something else to put on the warranty claim" when they submitted the claim to Peugeot (R.Vol. X at 120-121); he did not conspire with Peugeot or any of its representatives to file phony warranty claims; that no one at Peugeot ever suggested that he file phony warranty claims; and that to his knowledge, no one at Peugeot was ever involved in filing phony warranty claims for the L.J. Dreiling dealership. (R.Vol. X at pp. 170-173.)
 
 
 5
 On July 29, 1982, McMullin filed a motion for summary judgment supported by an affidavit in which he denied any knowledge of or participation in the conspiracy which the Dreilings alleged was undertaken for purposes of terminating their dealer relationship with Peugeot. McMullin's motion for summary judgment and that of Peugeot's were set for hearing on October 21, 1982.
 
 
 6
 On August 23, 1982, Podoll filed a response on behalf of the Dreilings to McMullin's motion for summary judgment. Within the response Podoll stated, inter alia, that: McMullin's affidavit in support of his motion was largely conclusory and self-serving; there had been limited discovery "into the affairs of Defendant McMullin"; all the facts relative to the liability of McMullin "are solely within the possession of Defendant McMullin and Defendant Peugeot"; "in order to fully understand McMullin's role in this complex litigation" further discovery is necessary; and that as a result of Peugeot's failure to tender responses to the Dreilings' discovery requests, the Dreilings had been unable to develop the facts essential to justify their opposition to McMullin's motion.
 
 
 7
 On September 1, 1982, a hearing was held on pending motions and an order was issued directing that all responses to the summary judgment motions be filed by September 13, 1982. On October 1, 1982, Podoll filed a second amended complaint on behalf of Dreilings. This complaint, designated "Plaintiff's Amended Antitrust Claims for Relief," incorporated provisions of the first amended complaint and alleged an entirely new basis of antitrust liability. Although this complaint identified McMullin as a defendant, it did not set forth any specific allegations of conspiracy or fault against him, nor did it state any claim for relief against him.
 
 
 8
 During the October 21, 1982, motion hearing, the following colloquy took place between the court and Podoll:
 
 
 9
 THE COURT: Could you point those out to us, Mr. Podoll? Why is Mr. McMullin here? That's what we are trying to find out.
 
 
 10
 MR. PODOLL: McMullin is an employee of Peugeot.
 
 
 11
 THE COURT: That's fine, but what's--show us the allegation in the Complaint that alleges some legal wrongdoing which would justify damages against Mr. McMullin.
 
 
 12
 MR. PODOLL: Well, Your Honor, as far as the--as far as the Complaint goes, what we are basically saying about Mr. McMullin is he was the Peugeot agent who was put in a supervisory role by Peugeot in regard to warranty submissions from L.J. Dreiling.
 
 
 13
 THE COURT: Would you tell me which part of the Complaint it is in which you are basically saying that?
 
 
 14
 MR. PODOLL: Okay.
 
 
 15
 THE COURT: People are entitled to fair notice.
 
 
 16
 MR. PODOLL: Paragraph 19 would be the first paragraph where Mr. McMullin is identified.
 
 
 17
 THE COURT: Paragraph 19?
 
 
 18
 MR. PODOLL: Yes. That's where he is first identified and his role is identified.
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 THE COURT: That's your first claim for relief?
 
 
 22
 MR. PODOLL: That's the first claim for relief.
 
 
 23
 THE COURT: That's now being amended?
 
 
 24
 MR. PODOLL: That's now being amended.
 
 
 25
 THE COURT: So that won't be here any more.
 
 
 26
 MR. PODOLL: No, that will not be here. In the antitrust claim, we will not seek relief against McMullin and Bartlett.
 
 
 27
 THE COURT: So that's the only place you were seeking relief against McMullin and Bartlett, right?
 
 
 28
 MR. PODOLL: Your Honor, as I read the original Complaint, we seem to have incorporated the paragraphs. The only issue--Your Honor, thinking about it, I believe that the conspiracy would be the only claim that we would have sought relief against McMullin and Bartlett.
 
 
 29
 THE COURT: And that's no longer in the case, is it, if I grant your motion?
 
 
 30
 MR. PODOLL: Yes, Your Honor, I would agree with that. I feel that--you see, if anything, focusing on the lower--
 
 
 31
 THE COURT: So you are withdrawing the conspiracy claim now?
 
 
 32
 MR. PODOLL: As it affects McMullin and Bartlett, yes.
 
 
 33
 THE COURT: So don't you want to dismiss McMullin and Bartlett?
 
 
 34
 MR. PODOLL: Your Honor, I feel, since we have not named them in the other claims for relief, we really don't have a choice.
 
 
 35
 * * *
 
 
 36
 * * *
 
 
 37
 THE COURT: So that if I do allow you to file an amended complaint, Bartlett and McMullin will not be named as defendants, is that right? That's the only place they now appear is in the caption.
 
 
 38
 MR. PODOLL: Yes, Your Honor. I think that was--
 
 
 39
 THE COURT: Certainly it doesn't state a claim for relief against them in the present status. I'm reluctant to dismiss a claim for failure to state a claim sua sponte. I normally don't do that but this looks like a case that I should. There is not, in the Complaint as you seek to amend it, that even claims they have even done anything wrong.
 
 
 40
 MR. PODOLL: Your Honor, I feel that we don't intend to proceed at this point with the claims against McMullin and Bartlett.
 
 
 41
 THE COURT: Does that satisfy your problem, Mr. Piche.
 
 
 42
 MR. PICHE: It does, your Honor, except I would like to apply to the Court for some relief for this extraordinary expense we have incurred.
 
 
 43
 THE COURT: Well, I think you should file a motion under 28 U.S.Code Section 1927, and we'll hear that in a timely way.
 
 
 44
 MR. PICHE: That's what I intend, Your Honor. Thank you.
 
 
 45
 R.Vol. VII at 12-16.
 
 
 46
 In granting the Dreilings motion to amend, the district court also noted:
 
 
 47
 THE COURT: What I'm going to do, because I think in the spirit of the rules I don't have really much choice, is I'm going to grant the motion to amend conditionally. The first condition is that--that it will be an entirely new complaint filed that will be called "Third Amended Complaint." The second condition is that before that Complaint is accepted for filing, an attorney who is experienced in the litigation of antitrust claims must enter an appearance on behalf of the plaintiffs as co-counsel, or counsel in this case. And with that entry of appearance I want to have filed an affidavit signed by that attorney setting out that attorney's experience in the field of antitrust law.
 
 
 48
 I think I'm doing you a favor, Mr. Podoll, because if you get to the end of a case like this, if it keeps on being handled this way, you are going to have the biggest malpractice case that ever hit Denver.
 
 
 49
 That takes care of the motion to amend.
 
 
 50
 R.Vol. VII at pp. 16-17.
 
 
 51
 On November 4, 1982, Joseph DiStefano was deposed. Within his deposition DiStefano stated, inter alia: he worked at L.J. Dreiling Motor Company between August and December, 1980; in September, 1980, he talked to McMullin because he was suspicious of the way warranties were being handled; he did not discuss his suspicions with the Dreilings; that he personally refused to sign any warranty claims; and that he told McMullin what he thought was happening relative to the "funny business going on with warranties."
 
 
 52
 On November 12, 1982, the Dreilings, through Podoll, filed a motion to dismiss McMullin, without prejudice. On November 24, 1982, McMullin filed his motion for attorney's fees and costs. Following McMullin's motion for attorney's fees, Podoll wrote McMullin's counsel under date of December 20, 1982. The letter stated in part:
 
 
 53
 From your Motion for Attorneys' Fees it is obvious that you do not understand the nature of the State Court action which we are contemplating bringing against Mr. McMullin....
 
 
 54
 Honestly, Greg, William McMullin has been treated with kid gloves in the course of this litigation. We have propounded twenty-five Interrogatories to him and have taken his deposition. Beyond this he has not been involved in any manner in the discovery disputes between Peugeot Motors of America, Inc., and the Plaintiffs. If it is the act of dropping the litigation against William McMullin that you believe is vexatious we will be willing to withdraw our Motion to Dismiss and leave him in the litigation. Clearly, however, this is not in the best interests of your client. In addition, as I have stated hereinabove, we have not reached a final decision as to whether we wish to pursue William McMullin, together with Lou Bartlett in our State Court action based upon the International State Bank of Trinidad line of cases. Assuming our clients are amenable, don't you believe it would be in the best interests of your client to attempt to resolve this matter in such a manner that your client was not pursued in our State Court action?
 
 
 55
 On February 10, 1983, at a hearing on McMullin's motion for attorney's fees the court found:
 
 
 56
 I find in this case, and I conclude, that as of the time this case was dismissed against Mr. William McMullin, defendant McMullin, there was no showing whatsoever of any claim ever having existed against him in this case. In fact, Mr. Podoll didn't even at that time claim he knew of anything which would have justified filing the claim or pursuing it against Mr. McMullin for approximately a year and several months before that time.
 
 
 57
 I find that the action as to Mr. McMullin was and is an unfounded action against him as a defendant; that it was maintained against him in bad faith, vexatiously, wantonly, for oppressive reasons.
 
 
 58
 I find that the result was to multiply the proceedings in this case unreasonably and vexatiously as to the defendant McMullin and in the interest of justice it isn't fair, it is not fair that Mr. McMullin, or anybody who has agreed to indemnify him in this matter, ought to have to bear the penalty of his having been brought into this case and dragged through it all these months.
 
 
 59
 And as to him I find that he is entitled to sanctions.
 
 
 60
 R.Vol. VIII at 32-33.
 
 
 61
 Within its formal written order of February 23, 1983, granting McMullin's motion for attorneys' fees and costs, the court found:
 
 
 62
 12. The Plaintiffs continued to assert claims for liability against the Defendant McMullin with knowledge that they had no factual or legal basis or claim of liability against him, and long after it would have been reasonable and responsible to have dismissed claims against the Defendant McMullin.
 
 
 63
 13. The Plaintiffs agreed to dismiss the allegations against the Defendant McMullin at the hearing on Motion for Summary Judgment on October 21, 1982, only after repeated requests of the Court to Plaintiffs to articulate the legal and factual basis for Plaintiff's claim against the Defendant McMullin.
 
 
 64
 14. After indicating to the Court that the Plaintiffs had no basis for any claim against the Defendant McMullin, the Plaintiffs through their counsel filed a Motion to Dismiss the Defendant McMullin from the litigation (without prejudice) while indicating to Defendant McMullin's counsel Plaintiffs' intent to pursue claims against the Defendant McMullin at a later time.
 
 
 65
 15. The Plaintiffs and their counsel commenced this action against the Defendant McMullin without grounds, either factually or legally, of any kind, maintained the litigation in bad faith, vexatiously, wantonly and for oppressive reasons.
 
 
 66
 R.Vol. IV at 798-799.
 
 
 67
 On appeal the Dreilings and Podoll contend: (1) 28 U.S.C. Sec. 1927 must be used sparingly and only in clear cases; (2) their decision to dismiss McMullin after limited discovery was the antithesis of unreasonable and vexatious multiplication of proceedings or bad faith; and (3) their perceptions of McMullin's wrongful conduct have been proven correct.
 
 I.
 
 68
 The Dreilings and Podoll contend that Sec. 1927 must be used sparingly and only in clear cases to avoid creating an unconscionable conflict between an attorney's private property interests and an attorney's ethical duty to zealously represent a client. The Dreilings and Podoll contend that there are very few lawyers, or even law firms that can afford to take the risk of large awards of attorney's fees being levied against them (Appellants' Opening Brief at 13) and that the "imposition of attorneys' fees under the facts and circumstances of this case would condone the assumption of unfettered discretion by the trial court in awarding sanctions pursuant to 28 U.S.C. Section 1927" (Id. at 22). Section 1927 provides:
 
 
 69
 Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 
 
 70
 Section 1927 is a natural outgrowth of the inherent authority of a court to assess costs and attorney's fees. In Jaquette v. Black Hawk County, Iowa, 710 F.2d 455 (8th Cir.1983), the court held:
 
 
 71
 A court has the inherent authority to assess attorney fees against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Hutto v. Finney, 437 U.S. 678, 689 n. 14, 691, 98 S.Ct. 2565, 2573 n. 14, 2574, 57 L.Ed.2d 522 (1978); Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. at 258-59, 95 S.Ct. [1612] at 1622 [44 L.Ed.2d 141]; Vaughan v. Atkinson, 369 U.S. 527, 530-31, 82 S.Ct. 997, 999-1000, 8 L.Ed.2d 88 (1962); Doe v. Poelker, 515 F.2d 541, 547 (8th Cir.1975), rev'd on other grounds, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977); Class v. Norton, 505 F.2d 123, 127 (2d Cir.1974).
 
 
 72
 Excess costs and attorney fees may also be assessed against an attorney personally. "The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (footnote omitted). In addition, under 28 U.S.C. Sec. 1927 (1976 & Supp. V 1981), a court may assess excess costs, expenses, and attorney fees reasonably incurred because of the actions of "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously...." Id.[16]
 
 
 73
 710 F.2d at 462.
 
 
 74
 Under Sec. 1927, a district court may assess an award of fees against an attorney appearing before the court if (1) the actions of the attorney multiply the proceedings and (2) the attorney's actions are vexatious and unreasonable. Suslick v. Rothschild Securities Corporation, 741 F.2d 1000, 1006 (7th Cir.1984); Overnite Transportation Co. v. Chicago Industrial Tire Co., 697 F.2d 789, 794 (7th Cir.1983). An attorney's actions are considered vexatious and unreasonable under Sec. 1927 if the attorney acted in bad faith. See United States v. Austin, 749 F.2d 1407, 1408 (9th Cir.1984); McCandless v. Great Atlantic and Pacific Tea, Co., Inc., 697 F.2d 198, 201 (7th Cir.1983); United States v. Blodgett, 709 F.2d 608, 610 (9th Cir.1983).
 
 
 75
 The power to assess costs against an attorney under Sec. 1927, however, is a power that must be strictly construed and utilized only in instances evidencing a "serious and standard disregard for the orderly process of justice," Kietel v. Las Vegas Hacienda, Inc., 404 F.2d 1163, 1167 (7th Cir.1968), cert. denied, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969). See also Overnite Transportation Company v. Chicago Industrial Tire Co., supra, at 795; United States v. Ross, 535 F.2d 346, 349 (6th Cir.1976). The findings of a district court in assessing an attorney's liability under Sec. 1927 will not be set aside on appeal unless the record establishes that the findings are clearly erroneous. Oglesby v. RCA Corporation, 752 F.2d 272, 279 (7th Cir.1985); United States v. Nesglo, Inc., 744 F.2d 887, 891 (1st Cir.1984).
 
 
 76
 Applying these standards to the facts herein, we hold that the district court did not err in assessing its award of attorney's fees and costs in favor of McMullin against Podoll, counsel for the Dreilings. We reject Podoll's argument that the award of fees and costs to McMullin "would condone the unfettered discretion" of the district court and that "this unbridled exercise of power would inevitably lead to a 'chilling of the zealous representation which clients can now expect from their attorneys" (Appellants' Opening Brief at 22).
 
 
 77
 As set forth, supra, the district court specifically found that (1) the Dreilings, through Podoll, continued to assert claims for liability against McMullin with knowledge that they had no factual or legal basis or claim of liability against him, and did so long after it would have been reasonable and responsible to have dismissed the claims against McMullin, and (2) that the Dreilings and Podoll commenced the action against McMullin without grounds and thereafter maintained "the litigation in bad faith, vexatiously, wantonly and for oppressive reasons." Viewing the evidence in light most favorable to McMullin, Cowles v. Dow Keith Oil & Gas, Inc., 752 F.2d 508, 510 (10th Cir.1985), and mindful that the findings of the district court must remain undisturbed on appeal unless they are clearly erroneous, Anderson v. City of Bessemer, --- U.S. ----, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) and that reversal is required only when we are left with a definite and firm conviction that a mistake has been made, Amoco Production Company v. Western Slope Gas Company, 754 F.2d 303, 309 (10th Cir.1985), we hold that the record amply supports the district court's assessment of attorney's fees and costs against the Dreilings and Podoll. The district court's findings, which are fully supported in the record, specifically address the elements of Sec. 1927, i.e., an attorney acting to multiply the proceedings in an unreasonable and vexatious manner.
 
 
 78
 That Podoll acted in a manner to multiply the proceedings and that he did so in bad faith is further evidenced by the fact that, notwithstanding Podoll's assertion in his August 23, 1982, response to McMullin's motion for summary judgment that further discovery was essential to fully understand McMullin's role in the litigation, Podoll thereafter, apparently without further discovery relative to McMullin, filed an amended complaint on October 1, 1982, and subsequently acknowledged during an October 21, 1982, hearing that McMullin should be dismissed based on the amended complaint.
 
 II.
 
 79
 The Dreilings and Podoll contend that they dismissed McMullin in a timely manner after limited discovery and that their action was the very antithesis of unreasonable and vexatious multiplication of the proceedings or bad faith. We disagree. As set forth, supra, the district court found that the Dreilings and Podoll continued to assert their claims against McMullin "long after it would have been reasonable and responsible" to dismiss the claims. The record fails to support the allegations of the Dreilings and Podoll that they dismissed McMullin in a timely fashion which was the antithesis of unreasonable and vexatious multiplication of the proceedings. Podoll's bad faith in pursuing McMullin is further reflected by the threatening letter Podoll mailed to McMullin's counsel on December 20, 1982, after McMullin's counsel had, in accordance with the court's suggestion, presented his request for attorney fees and costs pursuant to Sec. 1927. Podoll's letter becomes more egregious when we consider that Podoll stated to the district court at the October 21, 1982, motion hearing that McMullin could be dismissed because he was no longer in the case.
 
 III.
 
 80
 The Dreilings and Podoll contend that their perceptions of McMullin's wrongful conduct have been proven correct. This contention is without merit.
 
 
 81
 Dreilings and Podoll argue that since DiStefano stated in his deposition that he had talked to McMullin about some "funny business" with Bartlett's (a Dreiling employee) handling of warranty claims, and that because McMullin did not thereafter call Bartlett's conduct to the attention of L.J. Dreiling, their perceptions of McMullin's wrongful conduct in the conspiracy to have Peugeot terminate the Dreilings dealership were correct. We disagree.
 
 
 82
 The deposition establishes only that DiStefano told McMullin that he was "suspicious" of Bartlett's handling of warranty claims and that McMullin thereafter failed to relate DiStefano's concerns to the Dreilings. We deem it noteworthy that DiStefano acknowledged he did not relate his concerns about Bartlett to the Dreilings. Even should we assume that DiStefano related to McMullin his concern about Bartlett's handling of the warranty claims, and that McMullin did not thereafter discuss DiStefano's concerns with the Dreilings, still DiStefano's testimony, just as Bartlett's testimony that L.J. Dreiling told him to pad the warranty claims, simply presents a weighted evidentiary matter which does not, without more, establish McMullin's participation in a conspiracy to terminate the Dreiling's Peugeot dealership in violation of the antitrust laws. The assertion of the Dreilings and Podoll that DiStefano's deposition established their perceptions of McMullin's wrongful conduct simply does not wash.
 
 
 83
 During the course of oral argument before this panel in this appeal, appellant Richard B. Podall through his counsel and by personal acknowledgment advised the court that, should the district court's award be affirmed, it was his intention to assume the entire obligation and liability for the judgment and that his clients shall bear no part thereof. The judgment should so reflect.
 
 
 84
 WE AFFIRM.
 
 
 
 *
 The Honorable Luther L. Bohanon, United States District Judge for the District of Oklahoma, sitting by designation
 
 
 [16]
 Several courts have construed the standards established by section 1927. E.g., United States v. Ross, 535 F.2d 346, 349 (6th Cir.1976) ("an intentional departure from proper conduct, or, at a minimum, ... a reckless disregard of the duty owed by counsel to the court"); West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1092 (2d Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) ("a clear showing of bad faith"); Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163, 1167 (7th Cir.1968), cert. denied, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969) ("a serious and studied disregard for the orderly processes of justice"; "intentional ... acts of misconduct ... involving serious breaches of the Canons of Ethics"); see also Fisher v. Fashion Institute of Technology, 491 F.Supp. 879, 890 (S.D.N.Y.1980); North American Foreign Trading Corp. v. Zale Corp., 83 F.R.D. 293, 296-97 (S.D.N.Y.1979)
 This is not intended to be an exhaustive list of sanctions for abuse of the processes of the courts. See, e.g., Fed.R.Civ.P. 1, 11, 26, 30(g), 37, 41(b)-(d), 45(f), 55, and 56(g).