**BEECH AIRCRAFT CORPORATION and Paul J. Jonas, Plaintiffs,**

v.

**EDO CORPORATION and Bruce A. Lehman, Commissioner of Patents and Trademarks, Defendants.**

Civil Action Nos. 90–4185–DES, 91–4038–DES.

United States District Court, D. Kansas.

April 11, 1996.

Paul B. Swartz, Jeffrey L. Kennedy, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, Robert E. Hillman, Kurt L. Glitzenstein, Blair L. Perry, Fish & Richardson P.C., Boston, MA, for Beech Aircraft Corporation and Paul J. Jonas.

Richard D. Greene, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, Marvin Genzer, College Point, NY, for EDO Corporation.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, Nancy J. Linck, Albin F. Drost, Linda Moncys Isacson, Scott A. Chambers, Arlington, VA, for Patents and Trademarks Commissioner.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant EDO Corporation's ("EDO") motion for

award of attorneys fees. (Doc. 86). The sole legal basis for fees claimed by EDO falls under 28 U.S.C. § 1927. Specifically, EDO charges Beech Aircraft Corporation ("Beech") with instituting litigation having identical objectives in two separate forums, the first suit proving wholly unnecessary and expensive and containing spurious and baseless claims which required significant effort and expense in defense, only to result in their ultimate but untimely abandonment.

## I.  BACKGROUND

This litigation has traveled a long and circuitous path. It was preceded by a 1985 contract dispute between Beech Aircraft Corporation ("Beech") and EDO Corporation ("EDO"). EDO sued Beech for breach of contract and misappropriation of trade secrets. In October of 1988, this court entered judgment against EDO finding that the contract between the parties had not been breached and that Beech had not misappropriated trade secrets. *EDO Corp. v. Beech Aircraft Corp.*, 715 F.Supp. 990 (1988) (included in the judgment was the ruling that the "H" joint technology, discussed below, was the property of Beech). EDO appealed that judgment, but the Tenth Circuit Court of Appeals affirmed this court's ruling. *EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447 (10th Cir.1990).

While judgment was pending in district court on the breach of contract and misappropriation suit, both Beech and EDO filed patent applications on "H" joint technology, used in manufacturing a wing for a new type of aircraft called a Starship[1]. Patents were awarded to both Beech and EDO which resulted in the Patents and Trademarks Office ("PTO") declaring an interference between Beech's and EDO's respective patents. The Board of Patent Appeals decided the interference in EDO's favor and granted the patent rights to the "H" joint technology to EDO.

In 1990 Beech sued EDO and the PTO in the District of Columbia seeking to void the decision of the Board of Patent Appeals ("Board") in the interference proceeding and/or to obtain an assignment of EDO's patent and EDO's patent application ("Suit-1"). Count I of the complaint challenged PTO's jurisdiction and requested that the court review PTO's interference decision pursuant to 35 U.S.C. § 146, and reverse or vacate the decision accordingly. Count II sought relief under 35 U.S.C. § 291, alleging that the Beech patent and the EDO patent were interfering patents. Count III sought relief under 35 U.S.C. § 256, requesting that the inventorship listed on the EDO patent be corrected to indicate that Paul Jonas was the inventor or co-inventor of the patent subject matter. Count IV requested that the court order EDO to assign the EDO patents to Beech.

In October of 1990—several months after Suit-1 was filed—Beech commenced a second suit against EDO and the PTO in this court ("Suit-2"). It contained three requests for relief similar to those in the District of Columbia case: 1) an assignment of EDO's patent on the "H" joint technology (similar to Count IV in Suit-1); 2) an order showing Beech employee Paul Jonas as either the sole inventor or co-inventor of the patented technology (similar to Count III in Suit-1); and 3) a request for an interference between the two patents (Beech and EDO) and to declare EDO's patent claim to be invalid (similar to Count II in Suit-1). There was no count in the complaint challenging jurisdiction and authority of the PTO and its regulations.

In March of 1991, Suit-1 was consolidated with Suit-2, the case then pending before this court. On November 1, 1991, cross-motions for summary judgment in the consolidated cases were ruled upon in *Beech Aircraft Corp. v. EDO Corp.*, 777 F.Supp. 884 (D.Kan.1991). In that order, this court decided that Beech's claims for assignment of the EDO patent and the EDO application

---

**1.** Beech employee Paul J. Jonas ("Jonas") and EDO employee Dale Abildskov ("Abildskov") were who each of the companies claimed invented the "H" joint technology used to attach spars to the wing skins of the Starship manufactured by Beech. Beech is the assignee of Jonas's pat-ent rights and EDO is the assignee of Abildskov's patent rights. For simplicity's sake, Jonas's patent claim will be referred to as the "Beech patent" and Abildskov's claim will be referred to as the "EDO patent."

(Count IV in Suit–1 and Count I in Suit–2) were not barred by *res judicata*, by the compulsory counterclaim doctrine, or by the statute of limitations. However, the patent assignment Beech requested was denied and the judgment of the PTO in the interference proceedings was vacated.

Beech, Jonas and EDO all appealed from the decision of this court. *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237 (Fed.Cir. 1993). The Tenth Circuit affirmed this court's refusal to order an assignment of the EDO patent and the EDO application. However, the Court of Appeals reversed this court's ruling vacating the PTO decision and remanded the case back to this court with instructions to grant EDO's motion for summary judgment on the assignment issue and to consider the remaining summary judgment motions pending in Suit–1.

Upon remand, this court ordered the parties to show cause on all remaining issues. (Doc. 72, 91–CV–4038–DES). In its response, Beech withdrew several arguments, leaving only two issues: whether the issue of Jonas as the co-inventor of the patent at issue could be raised when it was not raised in an earlier proceeding and whether Beech could seek determination by this court of an interference between the Beech patent and the EDO patent. The court concluded that Beech was precluded from raising the issue of co-inventorship and the court declined to institute a second interference proceeding. *Beech Aircraft Corp. v. EDO Corp.*, 896 F.Supp. 1096 (D.Kan.1995).

## II. DISCUSSION

### A. The standard of review for attorneys' fees.

As noted, EDO's authority for its claim to have attorneys' fees awarded falls under 28 U.S.C. § 1927, which states:

Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys'

fees reasonably incurred because of such conduct.

The leading case from the Tenth Circuit regarding the application of § 1927 is *Braley v. Campbell*, 832 F.2d 1504 (10th Cir.1987) (*en banc*). In *Braley*, the court noted:

An attorney becomes subject to § 1927 sanctions 'by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law.... A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care.'

*Id.* at 1511 (*citing In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985). The court recognized the importance of not applying § 1927 in a way that would dampen the "legitimate zeal" of an attorney in representing a client and that § 1927 should be "strictly construed and utilized only in instances evidencing a 'serious and standard [sic] disregard for the orderly process of justice.'" *Id.* at 1512 (*citing Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985)).

Also in *Braley*, the court explained "that excess costs, expenses, or attorney's [sic] fees are imposable against an attorney personally for conduct that, *viewed objectively* manifests either intentional or reckless disregard of the attorney's duties to the court." *Id.*

Other circuits have been more explicit in defining what is meant by vexatious in a § 1927 context. "Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be ... [it] demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence." *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir.1990); *See also U.S. v. Ross*, 535 F.2d 346, 349 (6th Cir.1976) (wherein the court adopts *Webster's Third New World International Dictionary* defining "vexatious" as "lacking justification and intended to harass.")

### B. Beech's conduct is not sanctionable.

This motion is the finale of what can be characterized as a suit of intransigence, i.e.,

each side doggedly pursuing its patent rights to the "H" joint technology. Both sides prevailed at some point along this protracted course. Nowhere does this court find behavior on behalf of Beech demonstrating reckless indifference to the law thereby multiplying the proceedings unreasonably or vexatiously.

In the original lawsuit, this court found that Beech did not violate the terms of the contract with EDO and that "Beech ... applied for and received a patent on the 'H' joint technology." *EDO Corp. v. Beech Aircraft Corp.*, 715 F.Supp. 990, 993 (D.Kan. 1988). Meanwhile, EDO prevailed in the interference proceeding conducted by the PTO and was declared the holder of the patent by the PTO.

Beech appealed the PTO's decision by instituting two lawsuits—one filed in the District of Columbia and the other filed in the District of Kansas—which were ultimately consolidated. This court decided in favor of Beech (in part) by vacating the PTO's finding that the patent rights belonged to EDO. The Tenth Circuit then reversed that ruling.

EDO claims the litigation begun in the District of Columbia was undoubtedly a desperate attempt on the part of Beech to reverse a highly unfavorable default judgment against it. Albeit, EDO was awarded patent rights by the PTO in the interference proceeding, but Beech correctly points out that 35 U.S.C. § 146 provides the proper method for challenging and appealing decisions of the PTO. Given that this court had previously held that Beech did have the patent rights to the "H" joint technology, it is not unreasonable (nor completely desperate) for Beech to have challenged in federal district court the PTO ruling against it.

EDO contends that by filing Suit–2 in Kansas containing identical issues as Suit–1 that Beech is liable for wasting the cost of defense in the District of Columbia. In essence, EDO contends that the effort spent on defending the issues presented in Suit–1 had no applicability to Suit–2. That is beyond reason. In fact, Suit–2 was likely less difficult to prepare since much of EDO's research and most of its arguments had already been briefed by attorneys in District of Columbia.

Also, the fact that Beech requested the transfer of Suit–1 to this district for consolidation with Suit–2 evinces an effort on Beech's part to minimize the amount of litigation. Had Beech continued either suit after the other one had been decided that would have been evidence of serious multiplication of the proceedings.

Further, 35 U.S.C. § 146 required Beech to appeal within sixty days of the order entered by the PTO. At the time, Beech may have considered it prudent to proceed with its appeal in District of Columbia given that is where the PTO is located. However, it seems apparent that since this court had earlier decided that Beech owned the patent rights to the "H" joint technology, that strategically it made more sense for Beech to argue its appeal before a court predisposed toward recognizing its patent rights. That is a legitimate litigation tactic, one for which Beech should not be sanctioned.

EDO seriously undermines its position by misstating the sequence of events. EDO claims that after this court issued an order on April 10, 1995, to show cause to all parties, that Beech remained silent until after the PTO and EDO had prepared extensive responses to all of the issues (many of which EDO claims were spurious). The court's records clearly indicate that not only did Beech file its response on the same day as EDO filed its response, but that Beech's response was filed some twenty-five minutes before EDO filed its response.

As to the claims included in Suit–1, this court does not find them so devoid of merit as to constitute vexatiousness. The issue of who invented the "H" joint technology was the crux of this litigation and because of the contractual relationship between the parties years before, it was not altogether obvious who should be given credit for inventing the technology.

Beech's challenge of the PTO's jurisdiction and regulations was premised on its reading of the statutes governing patents (35 U.S.C. § 100, *et seq.*). Beech cited case law, legislative history and treatises on patent law in its arguments. Beech attempted to distinguish "patentable" claims (applications for patents)

**516**

from patents already granted. Viewed objectively, Beech's unsuccessful argument that only the court could conduct interference proceedings once patents are granted does not evince reckless disregard of Beech's duty to the court.

Moreover, the cases cited by EDO wherein sanctions were granted are easily distinguished from the instant case. In *Braley* the court found that the plaintiff filed a brief containing twenty-seven pages of facts, but only six pages of legal argument. 832 F.2d at 1508. Also, the court and opposing party had problems discerning what the plaintiff/appellant was alleging on appeal. *Id.* The plaintiff persisted in arguing that a petition for rehearing had neither been granted nor denied, but remained pending. *Id.* at 1509. Finally, the plaintiff violated the Federal Rules of Appellate Procedure by making improper arguments which further burdened the court. *Id.* at 1510. In contrast, Beech posited lucid and legitimate arguments that required serious consideration by the PTO and this court.

Correspondence from the plaintiff threatening to use procedural rules to protract litigation was evidence of bad faith and sanctionable in *Morris v. Lomas and Nettleton Co.*, 825 F.Supp. 979 (D.Kan.1993). The court found that letters written by the plaintiff to the defendant warning of how long the suit might take showed improper motive for the suit. *Id.* at 980. No such egregious conduct is evident in the instant case.

An appeal taken merely to delay the appellee's day of reckoning in making award payments was found sanctionable in *Herziefeld & Stern v. Blair*, 769 F.2d 645 (10th Cir. 1985). "The many instances in which counsel's references to the record are contrary to what is found indicate that he has been either cavalier in regard to his approach to this case or bent upon misleading the court." *Id.* at 647.

This court cannot find nor attribute analogous behavior to Beech.

**IT IS THEREFORE BY THE COURT ORDERED** that EDO's motion for award of fees (Doc. 86) is denied.