**Olivia A. SHACKELFORD, Plaintiff,**

v.

**COURTESY FORD, INC., Defendant.**

**No. Civ.A. 99–PC–813.**

United States District Court,
D. Colorado.

April 28, 2000.

Patricia Jo Stone, Stone & Associates, Denver, CO, for Plaintiff.

Monique Alexandra Tuttle, Stephanie B. Edinger, Holland & Hart, LLP, Denver, CO, Warren L. Nelson, Lyne A. Richardson, John K. Skousen, Fisher & Phillips, Newport Beach, CA, for Defendant.

### ORDER

COAN, United States Magistrate Judge.

In this employment case, plaintiff brought claims of wrongful discharge in violation of public policy and intentional infliction of emotional distress. The parties consented under 28 U.S.C. § 636(c) to disposition by a United States Magistrate Judge. On March 20, 2000, the court heard oral argument and granted defendant's Motion for Summary Judgment on all claims. Judgment of dismissal entered on March 24, 2000.

Before the Court is Defendant's Motion for Sanctions and Attorneys' Fees Pursuant to Federal Rule of Civil Procedure 11 and/or 28 U.S.C. Section 1927 [filed April 4, 2000]. The Motion has been fully briefed. Oral argument on the motion was heard on April 24, 2000.

### I. Background

Plaintiff was hired by defendant Courtesy Ford in August of 1996 as a sales representative or fleet manager; her duties included acquiring and servicing accounts for fleet sales. Plaintiff was assigned to one of two sales teams. Plaintiff was not employed under an express employment contract. In fact, she signed an "applicant's statement" in which she agreed that her "employment will be for no definite period, regardless of the periodic payment of ... wages." "She further agreed that she had the right to terminate her employment at any time with or without notice and the Company has the same right." Shackelford also signed an acknowledgment of receipt of an employee handbook in which she agreed that the handbook "does not create a contract of employment." In her deposition, plaintiff acknowledged that no one made her promises as to the length of her employment with defendant; no one told her she would have a job with Courtesy Ford as long as she performed satisfactorily, and no one told her a certain number of disciplinary actions would be required before Courtesy Ford could terminate her employment.

Courtesy Ford had a written "no harassment policy," which stated

[w]e do not tolerate harassment of any of our employees, vendors or customers. Any form of harassment which violates federal, state or local law, including but

not limited to harassment related to an individual's race, religion, color, sex, national origin, citizenship status, age handicap or disability is a violation of this policy and will be treated as a disciplinary matter. For these purposes, the term harassment includes slurs and any other offensive remarks, jokes, or other verbal graphic or physical conduct.

The policy advised employees to report to a supervisor if they were being harassed. Courtesy Ford had another policy, the "professional behavior" policy, which stated it is "directed toward conduct which may be welcome by both parties and thus outside the definition of harassment, but which nonetheless may project an unbusiness like image for the company which could lead to future problems."

Plaintiff complains that she was called a "black bitch" by a coworker. Plaintiff acknowledged there were disputes between herself and employee Bill Lagoni, on the other sales team. Courtesy Ford admitted that Lagoni was confrontive and had problems with other employees including plaintiff. Shackelford complained that she heard a rumor at Courtesy Ford, in which it was alleged that Lagoni said that if he woke up next to plaintiff he would "chew his arm off." Shackelford accused Lagoni of cursing at her, and calling her a liar and a thief, and plaintiff perceived that Lagoni was accusing her of taking customers. Shackelford admitted however that she should not be selling to others' customers, and acknowledged that she had received two warnings about her contacting customers of other sales persons.

In November 1997, plaintiff ordered a fleet of trucks without obtaining written approval from the customer. The customer, a public utility company, wanted trucks with a shorter wheel base, no bed and single axle wheels. When plaintiff placed the order for the trucks, she put in the wrong code, resulting in the receipt of trucks that were not in conformance with the customer's order. Plaintiff admitted making the error.

On January 20, 1998, plaintiff wrote a "letter of grievance" complaining that she felt her honesty, integrity and company loyalty were being questioned by her supervisors and stating that she believed that "management undermines my work by fueling and supporting negative and unprofessional behavior;" in that letter, Shackelford complained that Lagoni said in public "do you want me to help you pack her shit" [referring to plaintiff].

Although plaintiff mentioned unprofessional behavior in her letter of grievance January 20, 1998, she did not state in that letter that she was filing a complaint under the "professional behavior" or the "no harassment" policies.

Shackelford was terminated on March 13, 1998 because of her error in ordering the wrong trucks in November of 1997. In a March 20, 1998 response to an investigation questionnaire concerning the fleet order incident, plaintiff stated she did not always follow the required fleet vehicle order procedures; that she did not send the vehicle order confirmation to the customer; and that she did not ensure that the customer understood what was ordered nor did she obtain customer authorization for the dual wheel vehicles.

In her complaint, plaintiff averred that her termination was a wrongful discharge in violation of public policy and that she had had been subjected to outrageous conduct. At the summary judgment motion hearing on March 20, 2000, plaintiff admitted that she did not have a "public policy violation in the context of wrongful discharge." Plaintiff's counsel further stated that although she appeared to argue implied contract and promissory estoppel claims in response to defendants' motion for summary judgment, she was not alleging contract or promissory estoppel claims. Counsel also admitted she was not bringing racial or gender based discrimination or harassment claims. Rather, Shackelford claimed she was subjected to professional harassment, disparagement, unprofessional behavior, and humili-

ation, resulting in loss of hair and sleep and other emotional distress suffered primarily during the time she was employed by Courtesy Ford, as well as other damages, including unpaid commissions. Shackelford argues that she should not have been terminated when others made the same kinds of errors and were not fired.

## II. Analysis

Defendant now moves under Rule 11, Fed.R.Civ.P. and 28 U.S.C. § 1927 for attorney fees incurred in defense of this action. Defense counsel contends that he spoke with or wrote to plaintiff's counsel on a number of occasions to advise her that the claims against the defendant were frivolous and without a factual basis. Despite that warning, plaintiff filed suit and proceeded with her case. Defendant argues it was forced to defend the action and required to travel to Colorado to take plaintiff's deposition, engage in a fruitless settlement conference, and argue its motion for summary judgment, as well as the sanctions motion now before the Court. Defense counsel also contends that he had to respond to overbroad discovery requests, and draft defendant's motion for summary judgment and reply.

### A. Rule 11

Federal Rule of Civil Procedure 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). As amended in 1993, Rule 11 states:

By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

... the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; ... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ...

Rule 11(b), Fed.R.Civ.P. (2000).

■ With the 1993 amendments, Rule 11 now provides a "safe harbor." It prohibits the filing of a motion for sanctions until after the motion has been served on opposing counsel and she has had twenty-one days to correct the challenged action.[1] Here, defense counsel has not shown that he complied with the Rule's "safe harbor" requirement. Because defendant has not shown that compliance, its motion for Rule 11 attorneys' fees will be denied. *See, AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528–1529 (10th Cir.1997) (discussing safe harbor provision of the Rule); UFCW, *United Food and Commercial Workers Union Local No. 576 v. Four B. Corp.*, 893 F.Supp. 980, 987, (D.Kan.1995) (Rule 11 fees denied for lack of compliance with safe harbor provision of the Rule).

■ Further, defendant's motion fails because no pleading was pending before the Court. As the Rule now reads, a Rule 11 motion cannot be made unless there is some paper, claim, or contention that can be withdrawn. This case was dismissed

---

1. The Rule states "[a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, *but shall not be filed with or presented*

*to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected ..."* Fed. R.Civ.P. 11(c)(1)(A) (emphasis added).

and judgment entered on March 24, 2000. Thus, when defendant filed its motion for sanctions on April 4, 2000, there was no pleading that could have been withdrawn. Failure to file a Rule 11 motion until after conclusion of the case defeats the motion. *See Ridder v. Springfield,* 109 F.3d 288, 295–296 (6th Cir.1997), *cert. denied,* 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998).

### B. Inherent authority of the Court

In order to "deter frivolous and abusive litigation and promote justice and judicial efficiency, the federal courts are empowered to impose monetary sanctions by statutes and the rules of civil ... procedure as well as their inherent right to manage their own proceedings." *Braley v. Campbell,* 832 F.2d 1504, 1510 (10th Cir.1987) (internal citation omitted). The court has the authority to award attorney fees under its inherent authority if an attorney "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (as cited in *AeroTech,* 110 F.3d at 1528).[2]

### C. 28 U.S.C. § 1927

Section 1927 states:

Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (2000).

■ A court may assess attorney fees against an attorney under § 1927 if (a) the actions of the attorney multiply the proceedings, and (b) the attorney's actions are vexatious and unreasonable. *Dreiling v. Peugeot Motors of America, Inc.,* 768 F.2d 1159, 1165 (10th Cir.1985). Actions are considered vexatious and unreasonable if

the attorney acts in bad faith, *id.,* or if the attorney's conduct constitutes a reckless disregard for the duty owed by counsel to the court. *Braley,* 832 F.2d at 1511–12. "Vexatious" conduct includes briefing which obfuscates the legal issues and complicates the defendant's and the court's task of sorting them out. *Braley,* 832 F.2d at 1509. Section 1927 sanctions may be imposed where counsel persists in a position or in prosecution of a claim after it becomes clear that the position or claim is unfounded. *Dreiling,* 768 F.2d at 1166.

Reckless conduct differs significantly from mere negligence. Thus, inadvertence, incompetence, or unskillfulness do not warrant sanctions under § 1927. *United States v. Wallace,* 964 F.2d 1214, 1220 (D.C.Cir.1992). Rather, the attorney's conduct must rise to the level of a "serious and studied disregard for the orderly processes of justice." *Dreiling,* 768 F.2d at 1165 n. 16 (internal citation omitted); *see also Reliance Ins. Co. v. Sweeney Corp.,* 792 F.2d 1137, 1138 (D.C.Cir.1986) (attorneys accountable under § 1927 not only for subjective bad faith conduct but also for "reckless indifference to the merits of a claim"); *Toombs v. Leone,* 777 F.2d 465, 471 (9th Cir.1985) (sanctions appropriate under § 1927 when counsel has acted recklessly or in bad faith); *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 227 (7th Cir.1984) (attorney must intentionally act without a plausible basis, but the court "need not find that the attorney acted because of malice").

The Tenth Circuit has held that "excess costs, expenses, or attorney's fees are imposable against an attorney personally for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Braley,* 832 F.2d at 1512. Further, although a case may not be frivolous when filed, the continued prosecution of an action after it has become apparent that it is meritless

---

**2.** Defendant raised the "inherent authority" ground for the first time at the hearing on April 24, 2000, but did not provide further authority or argument for the Court's consideration.

will warrant sanctions under § 1927. *Johnson v. Resources for Human Development,* 888 F.Supp. 689, 692 (E.D.Pa.1995), *aff'd* 91 F.3d 123 (3d Cir.1996). Indeed, an inference of bad faith can be drawn from the fact that an attorney prosecutes a meritless claim or continues to prosecute a claim after its lack of merit becomes apparent. *People v. Operation Rescue National,* 80 F.3d 64, 72 (2d Cir.1996), *cert. denied sub nom. Broderick v. United States,* 519 U.S. 825, 117 S.Ct. 85, 136 L.Ed.2d 42 (1996)

The court finds that prior to commencement of the lawsuit, defendant's counsel wrote to plaintiff's counsel in December 1998, advising her of the reasons for terminating Shackelford's employment and recounting Shackelford's admissions that she had incorrectly placed the fleet order. See. Def. Motion for Sanctions, Ex. B. Notwithstanding, plaintiff filed her complaint, alleging that the defendant's actions resulted in embarrassment and humiliation and that finally, she was terminated for placing an incorrect order, which constituted wrongful discharge. *See* Complaint, at 2. Plaintiff did not refer to any public policy in her complaint, nor did she claim that Courtesy Ford had asked her to perform any illegal act. *Id.* She alleged that the same actions constituting wrongful discharge in violation of public policy also were the bases for the intentional infliction of emotional distress claim. *Id.* at 3.

Plaintiff was deposed on August 10, 1999. It is undisputed that in her deposition, she acknowledged that she had signed contractual disclaimers, that no one had made any promises to her about her continued employment; and that no one guaranteed progressive discipline preceding termination. Plaintiff further admitted that she had placed an incorrect order and that she had not followed Courtesy Ford policies with respect to placing that order. She said she was treated differently from others who had placed incorrect orders, who were allegedly not terminated. On November 18, 1999, defense counsel wrote plaintiff's counsel to advise her that plaintiff had been an at will employee and that

there was no basis under Colorado law for either of plaintiff's claims. *See* Def. Motion for Sanctions, Ex. H.

Defendant's Motion for Summary Judgment on all claims was filed on January 19, 2000. Plaintiff responded on February 22, 2000. As of the hearing date on March 20, 2000, plaintiff still was unable to cite any clear mandate of public policy in support of her wrongful discharge claim, and she then abandoned that claim.

### 1. Wrongful Discharge

In Colorado, an employee who is hired for an indefinite period of time is an "at-will employee" whose employment may be terminated by either party without cause and without notice. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo.1987). Generally, Colorado law does not recognize a cause of action for the wrongful discharge of an at-will employee, *see Schur v. Storage Technology Corp.,* 878 P.2d 51, 54 (Colo.App.1994), but the Colorado Supreme Court has recognized a narrow wrongful discharge exception to at will employment "if the discharge of the employee contravenes a clear mandate of public policy." *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 107 (Colo.1992). An at-will employee has a cause of action for public policy wrongful discharge if he can show that: (1) the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; (2) the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; (3) and the employee was terminated as the result of refusing to perform the act directed by the employer. *Id.* at 109. If plaintiff had researched the law of public policy wrongful discharge, she would have discovered that the

facts giving rise to plaintiff's discharge, even if true, could not constitute public policy wrongful discharge as a matter of law.

Notwithstanding the clear state of the law in Colorado, plaintiff alleged a questionable claim of wrongful discharge in violation of public policy. If she relied on further discovery to prove her claim, evidence to support the claim was never obtained. The court finds and concludes that, while arguably questionable at the time the complaint was filed, it was clear that the wrongful discharge in violation of public policy claim was meritless and that plaintiff had been warned that the claim was meritless after receipt of the transcript of plaintiff's deposition, and certainly by November 21, 1999, the presumed date of receipt of counsel's November 18, 1999 letter. Yet, plaintiff persisted in litigating her baseless public policy wrongful discharge claim. As a result defendant was obligated to defend against a frivolous claim of public policy wrongful discharge from November 21, 1999 until the dismissal of the case.[3]

■ Moreover, in her response to defendant's motion for summary judgment, plaintiff appeared to raise new allegations of breach of implied contract and promissory estoppel, claiming that Courtesy Ford had violated the no harassment policy and the unprofessional behavior policy. *See* Pl.Resp. to Def. MSJ, at 4–7. At the summary judgment oral argument, plaintiff's counsel contended that the policy violations supported her claim of wrongful discharge, while, at the same time, counsel admitted that plaintiff could not bring contract claims because of the disclaimers her client had signed. As a result of plaintiff's pleadings, defendant was obligated to defend against "moving target" claims, sort

through obfuscated issues and research and respond to the contract claims in its reply. Def. Reply to MSJ, at 2, 7–8, 10–12. Fees are warranted for plaintiff's counsel's conduct in her response brief.

## 2. Intentional Infliction of Emotional Distress

Defendant also seeks fees under Section 1927 for defense of a meritless intentional infliction of emotional distress claim. In order to prove outrageous conduct or intentional infliction of emotional distress under Colorado law, the behavior must be "so extreme in degree, as to go beyond all possible bounds of decency, and ... be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 666 (Colo.1999) (en banc) (quotation marks and citation omitted). The "defendant's conduct must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp v. United Air Lines, Inc.,* 854 F.2d 381, 383 (10th Cir.1988) (applying Colorado law), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989). Moreover, "liability ... does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46, cmt. d (1965).

It is first the responsibility of a court to determine "whether reasonable persons could differ on the question." *Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 883 (Colo.1994). Where it is clear to the court that the conduct complained of cannot be considered as rising to the egregious standard required, a claim for outrageous conduct is properly dismissed.

---

**3.** Defendant also argues it should be awarded its reasonable fees and costs because of the time it wasted in a settlement conference and for the time it spent in responding to plaintiff's allegedly abusive discovery requests. The court was not presented any authority, nor is it aware of any authority which would permit an award of attorney fees because a

plaintiff did not settle her case. In addition, the Court has reviewed the discovery at issue (attached to plaintiff's November 24, 1999 motion to compel), and does not find it to be abusive. Notwithstanding, the Court has not been asked to resolve a discovery sanctions request, which is properly brought under Rule 37.

Shackelford's claims were based on her feeling that she was terminated for placing an incorrect order, while others were not; that she was not supported by management, and that management condoned and ratified Lagoni's behavior. That conduct consisted of plaintiff's allegations that Lagoni called her a liar, that he accused her of stealing accounts that were not hers, and that he cursed at her. The court was not advised as to what the "cursing" was, but the other comments are in the nature of defamation. Case authority holds that defamatory remarks do not support a claim of outrageous conduct. *Steinberg v. Thomas*, 659 F.Supp. 789, 795 (D.Colo.1987). Termination from employment does not rise to the level of intentional infliction of emotional distress. *Grandchamp*, 854 F.2d at 383; *see also Rawson v. Sears Roebuck*, 530 F.Supp. 776 (D.Colo. 1982) (employee of thirty three years who claimed willful, wanton and malicious firing failed to state an outrageous conduct claim).

Shackelford complained that a co employee commented that plaintiff was a "black bitch" but because plaintiff did not bring claims of racial or gender based discrimination or harassment, that comment that was a stray comment, not related to the discipline or discharge imposed on plaintiff. Lagoni's comment that he would help plaintiff pack her things is ambiguous at best. The rumor that Lagoni told people that if he woke up with plaintiff next to him, he would "chew off his arm" has no legal significance. Plaintiff did not argue that any of the offensive comments were made by the person who decided to terminate the plaintiff's employment or that any of the comments resulted in her discharge. She only seems to have

claimed that the comments were made and that management should have supported her and protected her from such comments, as required by the professionalism and no harassment policies.

Even if plaintiff had been able to state a contract claim alleging that defendant did not follow its own policies, an employer's failure to follow its own policies does not amount to outrageous conduct. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350–51 (Colo.1988); *Salimi v. Farmers Ins. Group*, 684 P.2d 264 (Colo. App.1984) (employee alleging he was demoted in violation of policies failed to make out a claim for intentional infliction of emotional distress).

It is undisputed that plaintiff made a serious error ordering the wrong fleet of trucks justifying her termination. Although plaintiff maintained that others committed the same errors and were not fired, she produced nothing but third hand affidavits to that effect, in which two former employees claimed that unidentified others made unidentified ordering errors but were not disciplined. *See* Pl.Resp. to Def. MSJ, Ex. B. Moreover, even if plaintiff had been able to prove that she was terminated for incorrectly placing an order, while others were not, that conduct does not rise to the level of a actionable legal theory because there was no contractual or other legal requirement to treat all employees equally or fairly.

While plaintiff may have felt strongly that she was treated unfairly, unprofessionally, and even rudely[4], those circumstances were mere insults, indignities, threats or annoyances, which fail to rise to the level of egregious conduct required to

---

4. At the hearing, plaintiff argued that the facts in her case were similar to those in *Wing v. JMB Property Management*, 714 P.2d 916 (1986). *Wing* concerned the reversal of the grant of a motion to dismiss an outrageous conduct claim, because the plaintiff had set forth sufficient allegations of sexual harassment, in addition to Wing's allegation of being ridiculed, threatened, and humiliated, and of malicious actions on the part of defendants.

Here, there was no sexual harassment and no allegation of malicious action on the part of Courtesy Ford management. Shackelford claimed she was embarrassed and humiliated and that management did not support her. These actions do not rise to the level of those in *Wing* and do not rise to the outrageous conduct standard required to defeat a *summary judgment* motion under Colorado law.

support an intentional infliction of emotional distress claim. Prior to filing the complaint, plaintiff's counsel should have been aware of the law in Colorado. Certainly, when counsel received defendant's summary judgment motion, she should have reviewed the cases cited and concluded that her intentional infliction of emotional distress claim was without factual and legal foundation.

 Dismissal of the intentional infliction of emotional distress claim for failing to meet the legal standard is to be distinguished, however, from an attorney's pursuit of a meritless or frivolous claim sanctionable under 28 U.S.C. § 1927. The court does not find that plaintiff's counsel pursued a clearly frivolous or meritless outrageous conduct claim, or that her conduct was reckless or otherwise sanctionable with regard to that claim. The court finds that plaintiff's counsel interpreted the conduct complained of as outrageous. She should not be sanctioned simply because she was wrong and the claim was dismissed. The court thus finds that sanctions as to the intentional infliction of emotional distress claim are not warranted.

## III. ORDER

Sanctions are appropriate under 28 U.S.C. § 1927 for the litigation of the wrongful discharge claim after it was clear that the claim was without any foundation. *Dreiling*, 768 F.2d at 1166. In addition, plaintiff's counsel's conduct in response to the defendant's summary judgment motion was vexatious because of her briefing and arguments which obfuscated the issues and unnecessarily complicated defense counsel's and the Court's response to her claims. *See Braley*, 832 F.2d at 1509. Plaintiff pursued a frivolous wrongful discharge claim after having been warned by defense counsel. After it was clear that the claim had no basis, continued litigation of the case could no longer be characterized as simply zealous representation of the client. Rather, it is appropriately described as a serious and studied disregard for the orderly processes of the court. Based on the totality of the evidence, the Court finds and concludes that plaintiff's counsel acted in bad faith by continuing to prosecute the instant case against the defendant on the wrongful discharge claim from November 21, 1999 until the case was ultimately dismissed on March 20, 2000.

Accordingly, the Court finds and concludes that defendant is entitled to recover reasonable expenses and attorney fees incurred in defense of the wrongful discharge claim after November 21, 1999 and for researching, drafting and arguing the reply to plaintiff's response to the summary judgment motion.

For the reasons stated, it is hereby

**ORDERED** that Defendant's Motion for Sanctions ... [filed April 4, 2000] is **granted in part and denied in part** as set forth in this Order. It is further

**ORDERED** that defense counsel shall, **on or before May 30, 2000,** submit his affidavit of fees, with contemporaneous time records for time spent defending the wrongful discharge claim after November 21, 1999 until dismissal of the action, and for time spent researching and replying to plaintiff's response to the motion to dismiss. Defense counsel shall not request fees and expenses for the settlement conference or for discovery disputes. Plaintiff shall submit any objections to the fees on or before **June 15, 2000.** A hearing on the reasonableness of the fees sought shall be held on **June 20, 2000 at 10:30 am in C–504.** Defense counsel may appear by telephoning the court at 303–844–4892 at 10:30 a.m. Mountain Daylight Time.